#### FOR THE

### COUNTIES OF SUFFOLK, ESSEX, MIDDLESEX, NORFOLK,. PLYMOUTH, BRISTOL, BARNSTABLE, DUKES COUNTY AND NANTUCKET, AND. CRIMINAL CASES FOR THE OTHER COUNTIES, JANUARY TERM 1860 AT BOSTON

[CONTINUED FROM VOLUME XIV.]

PRESENT:

Hon. LEMUEL SHAW, CHIEF JUSTICE.
Hon. CHARLES A. DEWEY,  ⎤
Hon. THERON METCALF,  ⎥
Hon. GEORGE T. BIGELOW,  ⎬ JUSTICES.
Hon. PLINY MERRICK,  ⎥
Hon. EBENEZER R. HOAR,  ⎦

## PRESIDENT AND FELLOWS OF HARVARD COLLEGE vs. THOMAS STEARNS.

No action lies against a person for removing, with as little injury as possible, a fence separating a highway from a navigable creek at a place over which he has a right to pass, although he does so for the purpose of filling up the creek, and thus committing a nuisance.

The owner of a wharf cannot maintain an action for illegally filling up public navigable waters, and thereby cutting off all access to the wharf.

ACTION OF TORT, containing four counts, the first two for breaking and entering the plaintiffs' close in Cambridge, known as the College Wharf, and tearing down a fence; the third and

fourth for filling up a creek in which the tide ebbed and flowed by the side of the wharf, and obstructing navigation.

At the trial in Middlesex at October term 1858, before *Merrick*, J., it appeared that the defendant owned a parcel of land adjoining the plaintiffs' wharf, part of which had been formed by the filling up of the creek by the plaintiffs' grantors. The defendant contended that the fence stood in a public highway which he and the whole public had a right to pass over at pleasure as a highway, and that in taking down the fence and filling up the creek he had done no more than was necessary and lawful in order to pass from his land over the creek to the highway.

The judge instructed the jury, that if the creek was a public navigable highway, and the fence was a boundary between that highway and another which the defendant had a right to use, and he took down only so much of the fence as was necessary to enable him to pass from one highway to the other, doing as little damage as possible in effecting that object, he was justified in doing it, whatever his purpose might have been in passing from one highway to the other.

The plaintiffs requested the court to instruct the jury, that if there was a highway by the side of the creek, which the plaintiffs were bound to keep in repair, and they put up the fence by the side of that highway, and the defendant pulled down the fence, not to pass from the creek to the road or from the road to the creek, but in order to go through and fill up the creek and thus commit a nuisance, then the plaintiffs could maintain an action for pulling down the fence. But the judge declined so to instruct the jury.

In regard to the obstruction of the creek, the judge instructed the jury, that if the creek was a public navigable creek, it was a public highway for the enjoyment of all persons equally; and that if the damage suffered by the plaintiffs by means of the alleged obstruction was of the same kind as that suffered by the rest of the community, differing in degree only, the obstruction was not the subject of a private action, but the wrong must be redressed by a public prosecution.

The plaintiffs requested the judge further to instruct the jury,

that if their land bounded on a public navigable creek, and the defendant filled up the creek adjoining their land so as to cut them off from all access to their land by or through the waters of the creek, that was a peculiar and special injury to them, for which they might maintain an action.   But the judge refused to give this instruction.

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions.

*J. G. Abbott & J. Cutler*, for the plaintiffs.   1. It does not appear that the defendant had any right to pass from the creek to the highway.   The fact that a highway borders upon a navigable creek or river does not necessarily infer a right in any one to pass from the creek upon the highway, or to remove a fence between the two for any such purpose.   But if the defendant had the right to pass from the one to the other, he had the right to use either for legal and proper purposes only.   The fee of the way must be assumed to be in the plaintiffs, subject to the public easement.   If the defendant, having a right of way over the plaintiffs' wharf and creek, had the right to remove the fence, he still could not do it for the purpose of an improper or illegal use of the way, as for the purpose of enabling him to commit a crime or to do any other illegal act.   The plaintiffs would have been justified in using force enough to prevent the defendant from passing from one highway to the other for any illegal purpose, and can sue him for doing that which they might have prevented by force.   The fence was rightfully there as against all persons except those who wished to use the highways lawfully.

2. The plaintiffs' claim for damages by reason of the filling up of the creek was special and peculiar to themselves.   They claim damages for the diminished value of their land bordering on a navigable creek, by reason of the obstruction of that creek by the defendant — damages entirely different, in kind as well as in degree, from those suffered by the public generally by reason of the same illegal act.   The public would suffer inconvenience only in consequence of not being able longer to use the stream for the purposes of navigation.   The injury which the plaintiffs sue for is the reduction in the value of their land, because not

only the servants of the plaintiffs, but others, cannot approach it by water. The peculiar value of the plaintiffs' land by reason of its bordering on navigable waters would be entirely destroyed. *Stetson* v. *Faxon,* 19 Pick. 147. *Riddle* v. *Proprietors of Locks & Canals,* 7 Mass. 169. *Hart* v. *Basset,* T. Jon. 156. *Iveson* v. *Moore,* 1 Ld. Raym. 486, 1 Salk. 15, and 12 Mod. 262. *Greasly* v. *Codling,* 2 Bing. 263. *Wilkes* v. *Hungerford Market,* 2 Bing. N. C. 281. *Rose* v. *Miles,* 4 M. & S. 101. *Barron* v. *Mayor & City Council of Baltimore,* 2 Amer. Jur. 203.

*B. F. Butler & N. St. J. Green,* for the defendant.

DEWEY, J.* As to the first and second counts, alleging a breaking the close of the plaintiffs and taking down a portion of the fence thereon standing, we think the defence taken well maintained. We do not understand the question to be whether, if this fence had been erected by the plaintiffs in the discharge of a duty devolved upon them to maintain a public highway there, and the fence had been required as a railing or barrier to protect the traveller upon such way, and the defendant under such circumstances had removed such railing, he might not be liable in damages therefor. The case is one where, not for the purpose of discharging a duty to the public, but for their own private purposes, the plaintiffs have erected a fence which does in fact interpose an obstacle to a passage to the navigable creek. The defendant had, in common with others, the right to enter upon and use both the way and the creek. He had not only the common right of all citizens thus to enter upon the same, but a more direct interest therein as owner of land to be reached through these public ways. Having this right freely to pass over these ways, and from one of them to the other, he might take down so much of the fence as was necessary to enable him to pass from the one highway to the other, doing as little damage as possible in effecting that object. Nor does it make the defendant a trespasser, that he may have passed from the road to the creek having the further purpose of filling up a part of the creek. If he was thereby guilty of a public nuisance, for that he might be responsible; but this would give no right to the plaintiffs to

---

* SHAW, C. J. and HOAR, J. did not sit in this case.

recover damages for taking down the fence in the manner above stated. This disposes of the questions in the present case, so far as relates to the first and second counts.

The question arising upon the remaining counts in the declaration, which present a claim for damages for filling up the creek and obstructing the navigation of the same, is one of greater difficulty; for although the principles applicable to nuisances upon navigable rivers and public ways have been often discussed and applied to cases arising from time to time, yet the line of discrimination between the cases where a private action for such obstruction does or does not lie is not very clearly or satisfactorily established. The general rule is conceded, that for an injury common to all, arising from a public nuisance, the remedy is by an indictment or public prosecution. But if an individual suffers a peculiar and special damage not common to the public, he may have his private action.

Under this rule it was held, in *Stetson* v. *Faxon*, 19 Pick. 147, that where the plaintiff was owner of certain warehouses occupied by tenants paying rents therefor, and the plaintiff had been injured in respect to them by the defendant's erecting a building on the highway so as to obstruct the view of them from the traveller, and lead to a diversion of the travel to a distance from them, and diminish the yearly rents thereof, and the profitable use he was making of them, the plaintiff might maintain his action therefor as a special damage, and damages might be given for such yearly losses of rents caused thereby. In the opinion of the court given in that case, many cases were cited as illustrative of the law upon this subject, and some of them supposed strongly to support the decision there given.

To some of the cases cited as favorable to the plaintiffs, we will briefly refer. Thus in *Wilkes* v. *Hungerford Market*, 2 Bing. N. C. 281, which was an action for disturbing a right of way, and the damage alleged was that the plaintiff was the occupier of a shop in which he carried on the business of a bookseller, and made great gains by the sale of books, and that by the obstruction of a public way the plaintiff was prevented from carrying on the business in as beneficial a manner as he other-

wise would, and was deprived of divers gains, it was said by the court that the injury to the public generally was that they could not use the road as before, and for that alone an action would not lie, but the injury to the plaintiff was the loss of a trade which but for this obstruction he would have enjoyed, and for the latter he was entitled to maintain a private action.

*Rose* v. *Miles*, 4 M. & S. 101, and *Greasly* v. *Codling*, 2 Bing. 262, are also cases illustrating the principle, and marking the distinction between a public wrong, the subject of an indictment only, and a special injury to an individual, for which a private action will lie. The case of *Rose* v. *Miles* was an action for obstructing a public navigable creek by mooring a barge across the same, and thus preventing the plaintiff from navigating his loaded barges, whereby he was obliged to carry his goods overland; and for this a private action was sustained.

The case of *Barron* v. *Mayor & City Council of Baltimore*, 2 Amer. Jur. 203, was an action for filling up navigable water near the plaintiff's wharf, so as to lessen the depth of water at the wharf and interfere with the use of such wharf; and a recovery was had. In most of the cases there cited, there was evidence of particular and special present damage arising from hindrance and delay caused to the party while actually engaged in transporting goods, or the interruption of his regular business; or if for an injury to his tenements, it was a case where the tenant had actually abandoned the tenements, and a loss of the rents had already occurred. In regard to damages as to tenements, it was held in *Baker* v. *Moore*, cited in 1 Ld. Raym. 491, that the plaintiff must show that the houses had actual tenants in them.

But the later cases in this court seem to have been quite uniform in holding more strictly that, for an obstruction upon navigable waters or a public highway, the remedy was a public one by indictment, and not a private action by an individual, although he might be more affected by it than the public generally.

In *Smith* v. *Boston*, 7 Cush. 255, in the opinion of the court, 't is said: " The creation of a public nuisance, by placing an

obstruction in a highway, can only be punished and suppressed by a public prosecution; and though a man who lives near it, and has occasion to pass it daily, suffers a damage altogether greater than one who lives at a distance, he can have no private action, because in its nature it is common and public. But if he suffers a peculiar and special damage, not common to the public — as by driving a horse upon such obstruction in the night and injuring his horse — he may have his private action against the party who placed it there."

In *Brainard* v. *Connecticut River Railroad,* 7 Cush. 510, in one branch of the case these positions are again strongly stated, and in reference to an obstruction of a road, where such obstruction directly affected the plaintiff as owner of land adjacent to the road. After stating certain objections to maintaining the bill under the *St.* of 1849, *c.* 222, § 5, the court say: "There is another view of the case, which leads to the same result. The general rule of law is well settled, that individuals cannot enforce a public right, or redress a public injury, by suits in their own names."

The case of *Blood* v. *Nashua & Lowell Railroad,* 2 Gray, 137, was a case, however, more like the present. It was an action at law to recover damages for obstructing a stream used by the plaintiffs in connection with their saw-mill. It appeared that for forty years or more the occupants of the saw-mill had been accustomed to take a great proportion of their logs for sawing from the Merrimack River, through the mouth of Stony Brook, and up the same into a reservoir below their dam; and the court held that they were not entitled to recover for damages caused by the obstruction of the stream, so far as they were damages caused by its being rendered more laborious and expensive to get logs for the use of the plaintiff's mill from Merrimack River up Stony Brook. Upon the question whether Stony Brook was navigable for rafts and boats or not, Chief Justice Shaw, in delivering the opinion, says: " Supposing it to be navigable for boats and rafts, (the supposition most favorable to the plaintiffs,) they cannot maintain this action, because such obstruction would be a public, not a private nuisance; it would be a viola-

tion of the public right, not of the plaintiff's private right.   The
obstruction of a public right of way is a public, not a private
wrong; it may affect those near the obstruction much more
than the rest of the public; but the damage sustained by those
near it differs in degree only, not in kind.   It is a wrong there-
fore, if it be one, to be redressed by a public prosecution, not by
recovering damages in a private action."

   In *Brightman* v. *Fairhaven*, 7 Gray, 271, which was an action
of tort for the obstruction of a navigable river, whereby the
plaintiff was deprived of the right, in the exercise of his trade as
a spar-maker, to float his spars up the river to his land bound-
ing on the river, above the obstruction, and of all convenient
access to the same for the purposes of trade, or otherwise, it was
held that such obstruction gave no right of action to a spar-
maker who, after the original construction of the dam, purchased
land above, which was adapted for use as a spar-yard but for
this dam, although before such construction he had occupied
other land above for the same purpose, and although he showed
that he had since paid rent for the use of land for a spar-yard be-
low the dam, and had been obliged to drag part of his spars by
land to his spar-yard above the obstruction.   It was said by the
court, that for such damage the plaintiff could maintain no action;
that it did not appear that the plaintiff's land had ever been used
as a spar-yard; that the damage claimed was merely theoretic,
such as might be proved to be sustained by the other owners of
land on the stream, by reason of its not being navigable.   It is
true that the opinion assumed, as one reason for sustaining the
defence, that the land of the plaintiff had not been used as a
spar-yard, and to this extent it differed from the case at bar.   But
this did not answer the claim of the plaintiff for the depreciation
of the value of his land, occasioned by the unlawful obstructions
in the river, and for being deprived of the opportunity to use his
lands in the exercise of his legal rights to use this navigable
stream.   The continuance of the nuisance was equally as illegal
as its construction.   The case was put upon the ground that
the injury which the plaintiff suffered was one which he suffered
in common with all the other persons owning land upon, and

having occasion to use, the stream; and the cases that have been now cited were those relied upon to sustain the judgment pronounced by the court.

The case of *Rowe* v. *Granite Bridge*, 21 Pick. 344, bears upon the present case. That was a bill in equity, in which the plaintiff alleged ownership of land on a navigable creek obstructed by the defendant, and that thereby he could not have a free passage for such boats and light craft as he should have occasion to employ in removing the crops of hay as he had been accustomed to do. Although the case was eventually decided upon the ground that the stream was not in fact a navigable stream, yet the views of the court upon the case, had it been found to be a navigable stream, are thus stated: " It may be remarked that, as set forth by the plaintiff, the creek in question, as a navigable creek in which the tide ebbs and flows, would be a common highway, and the appropriate remedy for a nuisance therein would be an indictment."

Many of the above cases differ, as we are aware, from the present case; but the principles stated in them are applicable here.

If we now turn to the case before us, it will be found that the claim of the plaintiffs is solely for the injury to their land in consequence of the alleged obstruction. The brief of the plaintiffs' counsel puts the case thus: " The injury which the plaintiffs sue for is the reduction in value of their land, because not only the servants of the plaintiffs, but others, cannot approach it by water." No evidence appears to have been offered, or any claim set up, or instructions asked of the court, upon the ground of any particular actual hindrance or delay to the plaintiffs, or obstruction in reference to any case of actual intended use of their land by passing through the creek. The claim was for injury to their land by reason of an obstruction placed in a navigable stream or public way, whereby their land would be rendered more difficult of access and less valuable. Upon the case as presented, the court are of opinion that no exception lies to the instruction given.                    *Exceptions overruled.*