James Earl FERGUSON et al., Plaintiffs,

v.

The Honorable John Bell WILLIAMS, Governor of the State of Mississippi, et al., Defendants.

No. GC 71–72.

United States District Court, N. D. Mississippi, Greenville Division.

May 30, 1972.

J. Wesley Watkins, III, Greenville, Miss., Barry H. Powell, Jackson, Miss., for plaintiffs.

William A. Allain, Asst. Atty. Gen., Jackson, Miss., for defendants.

Before CLARK, Circuit Judge, and KEADY and SMITH, District Judges.

## MEMORANDUM ORDER

PER CURIAM:

On April 3, 1972, the Supreme Court of the United States vacated the judgment of this three-judge district court, Ferguson v. Williams, (N.D.Miss.), 330 F.Supp. 1012 (1971), and remanded the cause for further consideration in the light of Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274.

At issue is the constitutionality of Mississippi's 4-month registration requirement for voting in state and local elections as provided by its state constitution [1] and statute,[2] when tested by the Equal Protection Clause of the Fourteenth Amendment. The Supreme Court in *Dunn* struck down as violative of the Equal Protection Clause, Tennessee's statutory requirement that a voter reside in the state for one year and in the county for three months as prerequisites for registration to vote.[3] It is the unmistakable teaching of *Dunn*, here pertinent, that in a state's regulation of the right to vote in state and local elections, an exclusion from the franchise may not be upheld on the ground that it is reasonably related to a legitimate state interest and is permissible only where "necessary to promote a compelling state interest." We must, therefore, test Mississippi's registration requirement by the exacting standard of compelling state interest, noting that before the fundamental right to vote can be restricted, "the purpose of the restriction and the assertedly overriding interest served by it must meet close constitutional scrutiny." Evans v. Cornman, 398 U.S. 419, 422, 90 S.Ct. 1752, 1755, 26 L.Ed.2d 234 (1970).

Moreover, we are admonished that regulation by a state which affects the fundamental right to vote must be "tailored" to serve the legitimate objective, "and if there are other, reasonable ways to achieve those goals with a lesser burden on constitutionally protected activity, a State may not choose the way of greatest interference. If it acts at all, it must choose 'less drastic means'". *Dunn*, 405 U.S. at 343, 92 S.Ct. at 1003.

1. Miss. Constitution (1890), Art. 12, § 251: Electors shall not be registered within four months next before any election at which they may offer to vote; but appeals may be heard and determined and revision take place at any time prior to the election; and no person who, in respect to age and residence, would become entitled to vote within the said four months, shall be excluded from registration on account of his want of qualification at the time of registration.

2. Miss.Code Ann. § 3235. (1971 Supp.)

3. The Court also held that residential requirements of such duration unconstitutionally burden the right to travel interstate.

Mississippi's interest in requiring voter registration is, of course, the prevention of fraud and the securing of honest elections. Registration is the traditional manner by which persons who are permitted to vote are identified by record to be qualified voters. *Dunn* specifically observed that "surely the prevention of such fraud is a legitimate and compelling government goal." 405 U.S. 345, 92 S.Ct. 1004. Our present problem is to ascertain whether Mississippi can show imperative reasons for requiring a voter to register four months before the election at which he offers to vote. By its constitution, the state has classified all persons who possess general voter qualifications, apart from registration, into two groups: (a) One group whose members may vote where they have registered four months prior to the election, and (b) another group whose members may not vote because, although registered, they failed to do so four months in advance of the election.

▮ Under the exacting standard of equal protection, the state can require a cutoff date for registration no greater than what is clearly essential for its election officials to hold orderly elections. Therefore, the state may not, consistent with the Equal Protection Clause, justify a longer registration period by the use of part-time, ill-paid election officials, assisted only by limited staff, or by adhering to slow-moving election machinery adequate in other times. The state's plain duty, where it insists upon the maintenance of registration books, is to provide efficient and expeditious registration procedures that impose only the imperatively needed restriction. Our record in the instant case convinces us that while four months might not be considered an unreasonably long registration period in a state heretofore served by part-time election officials who operate with a small staff under an outmoded statutory procedure, a durational period of that length is not required to serve the state's compelling objective in registration. Indeed, the state has not attempted to justify a 4-month period by such an exacting standard. Our record affirmatively indicates that election officials, when energetically motivated and provided with adequate assistance and resources, can prepare for an election within 30 days after the registration books are closed. Moreover, state law, Miss.Code § 3130, provides for a registration deadline of only 30 days for voting in the August party primaries which have often had larger turnout of voters than in the general elections. Whatever may have been the nature of the problems incident to preparing for the general election upon the close of registration that originally caused the adoption of the 4-month registration period, it is quite clear from the evidence that such problems were related chiefly to administrative convenience, a consideration which alone may not be invoked to impinge upon the exercise of important constitutional rights. The relationship between the state's interest in honest elections and the fixed requirement that voters must have registered four months prior to the election is "simply too attenuated" to pass muster as a constitutional classification. *Dunn's* teaching is that the state's legislative judgment in matters affecting the franchise must satisfy an exacting standard of precision; and while there may possibly remain a limited degree of flexibility in the measure of time that a state may impose as a registration deadline, and still satisfy the demands of equal protection, we have no hesitation in holding that a 4-month period is not required to serve the state's substantial interests in orderly and honest elections.

For the above reasons, we are obliged to invalidate Mississippi's constitutional and statutory requirement for registering four months prior to voting in elections, as violative of the Equal Protection Clause of the Fourteenth Amendment, and confess error in our prior opinion which upheld the registration requirement under the rational relation standard that is no longer applicable in voting cases.

■■ Although *Dunn* mandates that we strike down the 4-month voter registration period, the equity power of this court vests the discretion to fashion a just and reasonable decree. Recognizing that problems would ensue if registration did not precede voting by some prefixed period, we are unwilling to leave the State of Mississippi, even temporarily, without an effective cutoff date for registration. The determination of what that period shall be, under the Equal Protection Clause, remains a legislative matter to be decided by the Mississippi Legislature. That body will not meet again in regular session until January 1973. Until it acts on this matter, the court deems it wise to prescribe, strictly as an interim measure, a registration cutoff date that will satisfy the compelling state interest standard. In this regard, the court is persuaded that a period of 30 days would meet the constitutional test. Congress, itself, has provided for a 30-day registration cutoff period as a requirement for voting for President and Vice President, 42 U.S.C. § 1973aa–1(d). A like period of time is required by Mississippi for voting in party primaries and by many states in general elections.[4] We, therefore, adopt that as an interim cutoff date imposed by the court pending action by the Mississippi Legislature.

We take note that the three-judge district court in Graham v. Waller, 343 F. Supp. 1 (S.D.Miss., Jackson Div.) 1972, has invalidated, under the Equal Protection Clause, Mississippi's state constitutional and statutory requirement that to be a qualified elector, a person must reside one year in the state, one year in the county and six months in the precinct or municipality, and has declared that a 30-day durational residency period in the state, county, and precinct or municipality satisfies the compelling

state interest for establishing bona fide residence for voting. We make clear that this 30-day residency period does not have to be satisfied before one may register to vote, for any person otherwise qualified may at any time register if he shall meet the residency requirement by the date of the election although he may not do so at the date of registration. This conforms to the interpretation consistently accorded the act of registration by the state supreme court,[5] and long followed in practice.[6]

It is, therefore, ordered and adjudged as follows:

(1) That the provisions of Art. 12, § 251 of the Mississippi Constitution of 1890 and Miss. Code Ann. § 3235, that prescribe a period of 4-months registration for qualified electors before voting in elections are hereby held unconstitutional, void and of no effect, as contrary to the Equal Protection Clause of the Fourteenth Amendment, and the defendants and their successors in office are hereby enjoined from enforcing such invalid provisions.

(2) That ballots cast by all persons otherwise qualified who registered thirty days prior to the state's November 1971 general election and impounded by interlocutory order of Mr. Justice Brennan in this cause be counted as votes cast by duly registered qualified voters.

(3) That pending action by the Mississippi Legislature, persons otherwise qualified to vote must be registered 30 days before the election at which they offer to vote, provided that such registration must be done in the manner provided by state law.

(4) That the defendants shall cause the State Board of Election Commissioners to promptly issue public notice of the order of this court and of the right of persons otherwise qualified to vote to

4. Mr. Justice Brennan's order entered pending appeal to the Supreme Court provided for a registration cutoff date of 30 days in advance of the November 2, 1971 general election.

5. Bew v. State, 71 Miss. 1, 13 So. 868, 869 (1893); State ex rel. Kiersky v. Kelly, 81 Mass. 1, 32 So. 909 (1902).

6. See Ferguson v. Williams, supra, 330 F.Supp. at p. 1015.

register within the time and manner herein provided. Said notice shall be co-ordinated with the notice prescribed by the three-judge district court in Graham v. Waller, supra, shall be inserted in the same material required to be posted by the defendant officials on the bulletin board of the courthouse in each county seat in Mississippi, and shall be published at the seat of government in Jackson, Mississippi, in the Jackson Daily News and in the Clarion-Ledger, both newspapers of general circulation in and throughout the State of Mississippi, once each week for three consecutive weeks in each newspaper, commencing promptly after this date. Proof of publication of such notice in each said newspaper shall be promptly filed with the clerk of this court in this case at Greenville as due and sufficient notice to the general public throughout the state of the existence of the requirement for registration to become a qualified elector.

The State of Mississippi will be assessed with all costs herein to be taxed by the clerk of this court, and as in such cases provided by law.