**Nelson DOTSON, et al., Plaintiffs,**

v.

**The CITY OF INDIANOLA, et al., Defendants.**

**No. GC 80–220–WK–O.**

United States District Court, N.D. Mississippi, Greenville Division.

Nov. 24, 1982.

Charles Victor McTeer, Greenville, Miss., for plaintiffs.

W. Dean Belk, Indianola, Miss., James L. Robertson, Oxford, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, District Judge.

Since the Supreme Court's June 1, 1982, affirmance —— U.S. ——, 102 S.Ct. 2287, 73 L.Ed.2d 1296 of the three-judge orders in this cause entered May 13 and September 2, 1981, 514 F.Supp. 397 and 521 F.Supp. 934, sustaining the claims of the plaintiff black citizens of Indianola against defendants, City of Indianola and its officials, based upon § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, this court has been besieged with a plethora of motions and cross-motions by both sides relating to the status of the black populated areas contiguous to the present municipal corporate limits but not annexed to the City. Defendants presently seek to annex nine subdivisions [1] having a black population of 1391 persons in proceedings that pend in the Sunflower County Chancery Court, Cause # 18,978, entitled "In the Matter of the Extension of the Boundaries of the City of Indianola." This action was filed October 13, 1981, after the Chancery Court rejected an earlier petition because it attempted to bestow "conditional" voting rights upon residents within the area proposed to be annexed. The condition has been eliminated. Since the present annexation proceeding does not include other contiguous populated areas having 2000

---

1. These subdivisions are identified as Fair Acres # 5, Green Acres, Green Acres # 2, Hamer, Kinloch, Kinloch # 2, Woodburn, Woodburn # 2 and Woodburn # 3.

black residents,[2] plaintiffs object to the annexation proceedings on the sole ground that it does not encompass all black neighborhoods in issue. Both sides candidly admit that their positions are dictated by numbers: the racial ratios of the City's present population, of the increased population through the limited annexation sought by defendants, and of the larger population to result from the total annexation demanded by plaintiffs.

Pertinent statistics are a matter of record. By annexing 1,391 nonwhites, defendants would expand the city population to 9,441, consisting of 4,047 whites (42.9%) and 5,394 nonwhites (57.1%), which approximates the racial percentages that heretofore existed on November 1, 1964, the date on which the Voting Rights Act became effective and thus the date by which to judge the legality of Indianola's subsequent, unprecleared annexations. Should the limited annexations proposed by defendants be approved in the state courts and precleared by the Attorney General, presumably, though not necessarily, the City would gain preclearance of the white subdivisions whose 1,901 residents would become eligible under § 5 to participate in municipal elections. In their brief, defense counsel assert:

> Let's lay the cards on the table. Defendants propose to annex the nine subdivisions in issue here in the context of these prior preclearance rulings of the United States Department of Justice. Defendants must take some remedial action if those 1901 white persons residing in the area annexed in May of 1965 are ever to be re-enfranchised. The Department of Justice has ruled that this annexation dilutes black voting strength and has refused to preclear it. And there the matter will stand until the City does something which satisfies Justice.

Dft. Brief, p. 6, dated February 16, 1982.

Plaintiffs object to any diminution of the numerical advantage accruing to blacks from the exclusion of whites residing in the unprecleared areas, inasmuch as 65% of the present population is black and 35% white. Plaintiffs fear that to reestablish the 1964 racial percentages of the municipal population might produce a white voting majority even though Indianola would continue to have a black population majority, and they contend defendants' failure to annex 2,000 additional blacks in Southgate is racially motivated and therefore forbidden by federal law. Plaintiffs' counsel assert:

> Clearly [defendants'] proposal to annex 9 subdivisions would serve their admitted interest in barring other black citizens from the voting and reinstating 1901 whites. The proposal intends to insure whites a set percentage of the voting population. White citizens do not like their present ratio of the total *voters* in the City—46%. Whites presently represent approximately 35% of the total population. They wish to increase their total population to 43%. Such a figure will give them a majority of the voters in the City. (Emphasis in original).

Plt. Memorandum Brief, p. 12, dated February 1, 1982. The City's position for not annexing the Southgate area is based, at least in part, upon racial considerations, and is made quite clear by the following recitals in the Indianola mayor's affidavit of August 19, 1981:

> I was told that plaintiffs' attorneys were continuing to demand that all nonwhite populated areas south of Indianola be annexed. If we had obtained approval of such an annexation from the Chancery Court, I am certain that the overall effect would have been a substantial dilution of the voting strength of white citizens living within the November 1, 1964, boundaries.
>
> One of the areas south of town, annexation of which has been sought by Plaintiffs, is Southgate Subdivision. Bringing Southgate into the City would substantially dilute the voting strength of the

---

**2.** These areas are Southgate, Grove Park and Eastover Subdivisions, and shall be collectively referred to as Southgate.

white community—to a point where it would be much lower than it was on November 1, 1964. I think it would be unfair to the white community to annex Southgate.

Affidavit of Phillip Fratesi at 3–4.

Consistent with these divergent positions, plaintiffs move the court to enjoin defendants from prosecuting the present annexation proceeding in the state chancery court, and defendants have countered by seeking to restrain plaintiffs from interfering with, or objecting to, the orderly disposition of that proceeding. Pretermitting the nondispositive motions in the case, the court addresses the cross-motions of the parties for partial summary judgment in their respective favor.

The facts essential to this ruling are without dispute, and are bottomed upon Indianola's population by race, the effect of reenfranchising whites in unprecleared areas through limited or total territorial annexations, and the motivation of the litigants established through admission of parties as well as by their counsel. It will therefore serve no useful purpose to permit further discovery or become embroiled in complicated procedural issues raised by a battery of motions in this already protracted litigation. Rather, summary judgment upon the merits of the case becomes appropriate through application of controlling legal principles to uncontroverted material facts.

■ As for the Class A plaintiffs—blacks who reside within Indianola's present corporate limits—the prior orders of this court have upheld their § 5 voting rights that Indianola may not enlarge or alter the municipal electoral base without first complying with § 5. Until the Attorney General withdraws objection to annexation of the white populated subdivisions or the City obtains a favorable declaratory judgment from the United States District Court for the District of Columbia, persons residing in unprecleared subdivisions shall not participate in municipal elections. Apart from an award of reasonable attorney fees against defendants, the Class A plaintiffs show no

injury cognizable under the Voting Rights Act or the Constitution. Whether the City choses to annex some or all of the black populated area outside the city limits, there can be no dilution or reduction in the voting strength of blacks residing within Indianola. That the Attorney General may withdraw objection to the inclusion of white neighborhoods when and if additional black neighborhoods may be annexed and precleared, presenting the possibility of enhancing white voting strength—an eventuality of which plaintiffs are apprehensive—requires that we speculate not merely on the course of the Attorney General's determinations but also upon unpredictable political consequences such as the extent of registration, candidate appeal, and racial patterns of voting in future municipal elections. Such conjectures are hardly the task for a court to divine, and we decline to embark upon them. The plain fact is that Indianola has, and will continue to have, a black majority population of no less than 57% under presently foreseeable conditions, and black voting strength will suffer no retrogression when measured by the effective date of the Voting Rights Act. *Jordan v. Winter,* 541 F.Supp. 1135, 1144 (N.D.Miss. 1982, 3–Judge Court). *Cf. Beer v. United States,* 425 U.S. 130, 141, 96 S.Ct. 1357, 1363, 47 L.Ed.2d 629, 639 (1976). Nor do we believe the Constitution lends aid to any group that seeks to maximize its voting strength by seizing upon the distorted annexation problems that confront Indianola. Accordingly, we grant defendants' motion for summary judgment to the extent that we dismiss all claims of plaintiff Class A other than the § 5 rights heretofore adjudicated in their favor and the remedy of an attorneys' fee to be allowed for the vindication of those rights.

The City's proposed annexation affects the Class B plaintiffs differently. Class B is comprised of two materially distinguishable groups with diverse, if not competing, interests: residents of the nine subdivisions that the City seeks to annex and Southgate residents whom the City has chosen not to include. There is an undeniably patent con-

flict between these two interests. Class B as a whole desires annexation, but not that annexation is offered to part of Class B, the other part of Class B says no—take all or nothing. At this stage of the proceeding, however, Class B continues to speak with one voice and attempts to deprive part of itself the relief which it has requested in this federal court. To avoid this internal conflict and in exercise of authority conferred by Rule 23(c)(4), F.R.Civ.P., we divide Class B into two subclasses. Residents of the nine subdivisions sought to be annexed now constitute new Class B. Southgate residents not included in the annexation attempt now constitute new Class C.

■ Under this new classification, we find the Class B plaintiffs no longer have claims against the City under the Constitution for failure to annex. Since the defendants are presently attempting to take the nine subdivisions in which these plaintiffs reside into the city limits, any claims for failure to annex them because of race are now moot. We are unpersuaded by plaintiffs' argument that annexing only a part of the black populated area in controversy is impermissible as a racial consideration— i.e., to annex a certain number of blacks in an effort to restore 1964 racial percentages. So far as the Voting Rights Act is concerned, this procedure has been suggested by the Attorney General. Race may be considered in redistricting or annexation so long as it does not discriminate invidiously against the voting strength of the minority. *United Jewish Organizations v. Carey,* 430 U.S. 144, 97 S.Ct. 996, 51 L.Ed.2d 229 (1977). *Carey* explicitly held that "compliance with the [Voting Rights] Act in reapportionment cases would often necessitate the use of racial considerations in drawing district lines." *Id.* at 159, 97 S.Ct. at 1006. The Court held that deliberate use of race in a plan representing "no racial slur or stigma with respect to whites or any other race, [does not constitute] discrimination violative of the Fourteenth Amendment [or] any abridgment of the right to vote on account of race within the meaning of the Fifteenth Amendment." *Id.* at 165, 97 S.Ct. at 1009.

This leaves the separate claims of the Class C plaintiffs which we find to be both maintainable and meritorious. Since those plaintiffs have been excluded from the proposed annexation, we must determine the effect of racial considerations on the part of defendants in refusing to annex Southgate. We emphasize that this federal court is concerned only with the constitutionality of the City's actions. We have no power to adjudicate either the merits of municipal annexation under the Voting Rights Act or decree annexation. By Miss.Code Ann. § 21–1–33 (1972), questions in an annexation proceeding are to be determined by the state chancery court, and they relate to whether the proposed annexation is (a) reasonable; (b) required by the public convenience and necessity; and (c) whether municipal services will be rendered to the annexed area within a reasonable time. The Mississippi Supreme Court has clearly held that these are factual issues which must be determined from evidence. *Dodd v. City of Jackson,* 238 Miss. 372, 118 So.2d 319 (1960); *Extension of Boundaries v. City of Biloxi,* 361 So.2d 1372 (Miss.1978). State law further provides a remedy, in § 21–1–45, to qualified electors of territory contiguous to a municipality to be included therein upon evidence presented in proceedings before the state chancery court that the public convenience and necessity would be served by the inclusion of such territory within the municipality. Necessarily, all factors relevant under state law for the propriety of annexation must be evaluated and determined in the courts of Mississippi as the proper forum, and not here.

■ Although we agree with defendants that Class C plaintiffs have no constitutional right to be annexed into the City of Indianola, *Wilkerson v. City of Coralville,* 478 F.2d 709 (8 Cir.1973), we do not agree that defendants may use race as a basis for refusing to annex the neighborhoods in which such plaintiffs reside. The reason expressed by Mayor Fratesi opposing annexation manifestly violates the Constitution because of racial motivation that invidiously discriminates against blacks. We

hold that official conduct so actuated contravenes the Due Process and Equal Protection Clauses of the fourteenth amendment. This is true even though Class C plaintiffs have never had the right to vote in Indianola elections and no voting right has been vouchsafed to them by the fifteenth amendment. Class C plaintiffs are constitutionally entitled to be dealt with by the defendants in any annexation proceeding affecting them no differently from, but the same as, whites under the same or similar circumstances. Though our research has disclosed no court decisions factually in point on the precise question here presented, the United States Supreme Court, in a long line of well-known cases, has forbidden governmental action that operates to invidiously militate against meaningful political participation of blacks or other minorities because of race. *White v. Regester,* 412 U.S. 755, 93 S.Ct. 2332, 37 L.Ed.2d 314 (1973); *Gaffney v. Cummings,* 412 U.S. 735, 93 S.Ct. 2321, 37 L.Ed.2d 298 (1973); *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971); *Gomillion v. Lightfoot,* 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960). *Gomillion,* factually most analogous to the case sub judice, invalidated a state statute that attempted to exclude blacks from a municipality as violative of the Due Process and Equal Protection Clauses of the fourteenth amendment, as well as the denial of the right to vote in city elections because of race in defiance of the fifteenth amendment. Though the situation here is converse to *Gomillion's* facts, it squarely falls within the fourteenth amendment principles there enunciated. Therefore, Class C plaintiffs may not be excluded from annexation on account of race.

In a recent decision, *Washington v. Seattle School District No. 1,* —— U.S. ——, 102 S.Ct. 3187, 73 L.Ed.2d 896 (1982), the Supreme Court reiterated that the "central purpose of the Equal Protection Clause . . . is the prevention of official conduct discriminating on the basis of race," *id.* at ——, 102 S.Ct. at 3202, 73 L.Ed.2d at 916, and that "the core of the Fourteenth Amendment is the prevention of meaningful and unjustified official distinctions based on race." *Id.* at ——, 102 S.Ct. at 3203, 73 L.Ed.2d at 917. The majority opinion in *Washington,* in striking down a state law forbidding local school boards from requiring a student to attend a school other than the one closest to his residence, stressed that the Equal Protection Clause was violated because the state used the racial nature of the question as the basis for shaping governmental policy, so as to impose substantial and unique burdens on racial minorities. So long as race is not a factor, the Supreme Court made clear that diverse political groups in our society may fairly compete within a just legal framework, even though obstacles may confront some who may seek to secure the benefit of a particular governmental action. *Id.* at ——, 102 S.Ct. at 3194, 73 L.Ed.2d at 907.

With these principles applied to this case, Class C plaintiffs' eligibility for annexation in any future administrative or judicial proceeding must be fairly and objectively evaluated by defendants solely on the basis of nonracial criteria. Within this sphere the City retains plenary power to make rational judgments regarding municipal annexation made in accordance with state law.

In summary, we sustain defendants' motion for summary judgment to the extent of dismissing all claims of Class A and Class B plaintiffs, and deny their motion with respect to Class C plaintiffs. We sustain plaintiffs' motion for summary judgment with respect to the Class C plaintiffs and deny the remainder of their motion. Consistent therewith, the court grants judgment dismissing all claims of Class A plaintiffs, i.e., blacks residing in the City of Indianola, deny as moot all claims of Class B plaintiffs, i.e., blacks residing in the nine subdivisions sought to be annexed by the City, and enjoin all plaintiffs, Classes A, B and C, from prosecuting or continuing to prosecute objections because of race to the pending annexation proceedings in the state chancery court. The court also grants judgment in favor of Class C plaintiffs, i.e., blacks residing in Southgate, Grove Park and Eastover Subdivisions on their claim not to be discriminated against because of

race by defendants on any question of municipal annexation affecting their areas that may arise in the future, and enjoins defendants from utilizing racial factors or considerations in any such annexation proceeding.

Let an order issue accordingly.