494 So.2d 348 (1986)
In re Inclusion into the CITY OF RIDGELAND, Mississippi.
Walter SCHMIDT, et al.
v.
CITY OF JACKSON.
No. 56756.
Supreme Court of Mississippi.
September 3, 1986.
Jerry L. Mills, Melton E. Knotts, Jr., Pyle, Harris, Dreher, Mills & Woods, Jackson, Jerry R. Wallace, Montgomery, Smith-Vaniz & McGraw, Canton, for appellants.
James L. Carroll, Douglas J. Gunn, Watkins & Eager, John Hedglin, Jackson, Joe R. Fancher, Jr., Canton, for appellee.
Before ROY NOBLE LEE, P.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
Today's appeal is that of persons residing in an unincorporated area contiguous to *349 two incorporated municipalities. These persons petitioned to be included in one of the adjoining municipalities which has answered and agreed to the annexation, only to find that the rebuffed municipality vehemently objects.
The principal question presented is whether the complaint in the nature of a petition for inclusion has been joined by two-thirds of the qualified electors of the area tendered for annexation. The Chancellor answered this question in the negative and dismissed the complaint. For the reasons articulated below, we affirm.

II.
On October 1, 1984, ninety-nine persons, Plaintiffs below and Appellants here, invoked the provisions of Miss. Code Ann. § 21-1-45 (1972) and sought incorporation into the City of Ridgeland, Mississippi, an area largely rectangular in an east-west sense, situated in Madison County and adjoining the city of Ridgeland on that city's western boundary. The southernmost boundary of the area in dispute is contiguous to the northern boundary of the City of Jackson along the Hinds-Madison County line.
The City of Ridgeland answered the complaint and admitted its allegations, apparently agreeing that the area in controversy should be annexed to that city. The City of Jackson, however, vigorously resisted the complaint and sought dismissal on numerous jurisdictional and procedural grounds  short of an adjudication on the merits.
On March 27, 1985, the matter was heard in the Chancery Court on these preliminary issues. Substantial testimony was adduced going to the question whether two-thirds of the qualified electors in the geographical area sought to be made a part of the City of Ridgeland had in fact and in law joined the complaint. On April 23, 1985, the Chancery Court released its opinion finding the complaint inadequate, jurisdictionally and procedurally. On May 24, 1985, the Chancery Court entered its final order dismissing the complaint. This appeal has followed.

III.
The legislature of this state has by statutory enactment prescribed a means by which persons may obtain annexation to municipalities adjacent to the areas in which they live. Miss. Code Ann. §§ 21-1-45 and -47 (1972). In pertinent part Section 21-1-45 provides for the filing of a complaint
which said petition [complaint] shall be signed by at least two-thirds (2/3) of the qualified electors residing in the territory proposed to be included in... such municipality.
The matter of inclusion of one's home and surroundings into an adjacent municipality is of considerable importance. The municipality into whose corporate limits the petitioners seek to come, as well as other adjacent or nearby municipalities, have important and often conflicting interests at stake. Our responsibility is to see that the mechanism the legislature has afforded be a viable one, fairly administered, not entailed by hypertechnical procedural niceties. See Enlargement of the Boundaries of Yazoo City v. City of Yazoo City, 452 So.2d 837, 843 (Miss. 1984); see also Dotson v. City of Indianola, 551 F. Supp. 515, 519 (N.D.Miss. 1982).
The City of Jackson is dead wrong when it urges that Section 21-1-45's remedy is available only to persons who are already the inhabitants of an incorporated territory. While we concede that the statute could have been more clearly worded, it may not be read in its entirety without the realization that the legislature has provided that both persons within an incorporated territory at the time of petitioning as well as those without may upon proper showing enjoy the remedy it affords. As indicated above, the area in question at present is an unincorporated area of Madison County. It is a "territory contiguous to and adjoining any existing municipality [to-wit: the City of Ridgeland]" and as such its citizens are entitled to proceed under Sections 21-1-45 and -47.

*350 IV.
Among the various bases for its ruling against Plaintiffs, the Chancery Court held that
the proof established that two-thirds of the qualified electors in the area had not signed the petitions.
Plaintiffs assign this conclusion as error. Because it is perhaps the most basic of the deficiencies found in the complaint  the others, at worst, being amendable  we will consider it first.
Plaintiffs' complaint stated a claim within the subject matter jurisdiction of the Chancery Court, a non-confessable jurisdiction which, as we have oft repeated, turns upon the well pleaded allegations of the complaint (in the statute denominated "Petition").[1]Lee v. Coahoma Opportunities, Inc. 485 So.2d 293, 294 (Miss. 1986); American Fire Insurance Co. v. Athens Stove Works, Inc., 481 So.2d 292, 296 (Miss. 1985); Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985). The complaint filed October 1, 1984, more than adequately states a claim under Section 21-1-45 upon which relief may be granted. Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 504-06 (Miss. 1985). Without question, the allegations of the complaint were sufficient to confer upon the Chancery Court authority to proceed further and, indeed, to hold the hearing which has resulted in the order of dismissal, the appeal of which we consider this day. See, Penrod Drilling Co. v. Bounds, 433 So.2d 916, 924-25 (Miss. 1983).
The merits of the question presented turn upon the criteria to be employed in determining whether a person residing in the area should be counted in the quest for the two-thirds majority. While the Chancery Court did not give the definition it employed in deciding that the petition fell short, we consider that the positions of the parties at trial and in their briefs on this appeal may be safely regarded as framing the issue.
The City of Jackson takes the position that the calculations are made as of October 1, 1984, the date of the filing of the complaint; that is, identifying all persons residing in the area sought to be included into the City of Ridgeland, determining which on that date were registered to vote in Madison County, Mississippi, and then by reference to the complaint determining whether two-thirds of those so registered had signed the complaint. The City presented testimony to the effect that, when this procedure was employed, the conclusion was that there were 115 qualified electors in the area, 72 of whom had signed the complaint. This computes to 62.6 percent,[2] slightly short of the required two-thirds or 66 2/3 percent.
Plaintiffs' view is interestingly different. They accept the October 1, 1984 filing date as the date on which the determination must be made. They argue, however, that the term "qualified elector" in the statute means persons who would be eligible to vote if an election were held on that day, pointing out familiar legal requirements that, in order to be eligible to vote in a given election, persons must have registered *351 the minimum of thirty days in advance of the election, see, e.g., Ferguson v. Williams, 343 F. Supp. 654 (N.D.Miss. 1972); Graham v. Waller, 343 F. Supp. 1 (S.D. Miss. 1972). Under this test 69.358 percent of qualified electors joined the complaint.[3]
The question turns on the definition to be given the term "qualified electors" within Section 21-1-45, the legislature having provided no dispositive definition.
The two-thirds requirement was, no doubt, imposed to assure that, before an area is incorporated into a municipality, it be ascertained that a clear majority of the persons residing there desires annexation. After all, the consequences of such annexation are not insignificant  both in the availability of services and benefits and the exaction of taxes and assessments. Suffice it to say that the question of whether the benefits exceed the costs is one with respect to which reasonable people may and do differ. This notion provides us with a compelling reason to construe the statute as broadly as may reasonably be done, that is, to allow a maximum number of those persons who may be affected by the results of the annexation proceeding to participate (by signing the complaint or refraining to do so).
There is, of course, the competing consideration of assuring that the persons voting are those who have some stake in the community and are not mere transients. For this reason the legislature has required that participation in the annexation process be limited to "qualified electors" rather than that no doubt larger group who are mere "residents". These thoughts would appear to lead to the conclusion that the counting should be done by reference to the names of persons who were qualified electors on the date the complaint is filed without further restrictions. Cf. City of Clinton, Mississippi v. Smith, 493 So.2d 331, 339 (Miss. 1986).
The City of Jackson agrees and urges in support the provisions of a statute taken from another chapter of the Code, Miss. Code Ann. § 23-5-85 which appears in that context to provide a definition of "qualified elector".[4] This statute does provide a definition of "qualified elector" consistent with the City's position but does not stop there. The statute goes on to provide that entitlement to vote is a separate idea to be measured by the now superseded four months pre-election registration requirement. This statute begs the question and plays into the hands of Plaintiffs who argue that the signing of a complaint in the nature of a petition for annexation or inclusion is in effect a "voting by petition." Lowe v. City *352 of Jackson, 336 So.2d 490, 491-92 (Miss. 1976); Pike County School District No. 1 v. Pike County Board of Education, 247 Ark. 14, 444 S.W.2d 75, 77 (1969).
Plaintiffs argue that, inasmuch as voting by petition is a form of an election, we should employ the entire panoply of rules ordinarily enforced when public elections are held. But this argument also begs the question, for it fails to articulate why voting by petition is a form of election that should be subject to the same strictures as other elections. Plaintiffs never articulate why it would be necessary or even desirable that the thirty day (or any other) pre-election registration requirement be enforced here. When we consider the strong policy reasons for allowing as many of the legitimately affected persons as possible to have a voice in the matter, it follows that Plaintiffs ought shoulder the burden of articulating why the thirty day pre-election registration requirement be enforced (in view, of course, of the fact that it is not made mandatory by statutory enactment).
In the ordinary public election, general or primary variety, practical necessity requires some pre-election registration cutoff date. The elections commissioners must prepare the poll books for distribution to the managers of the various precincts and must know what names to place in those poll books. This takes time and must be done with meticulous care that no mistakes be made. While a strong argument could be made that the minimum pre-election registration cutoff date should be as short as reasonably practicable, the interest of conducting a fair and orderly and non-fraudulent election necessitates some minimum pre-election cutoff date. Although the matter has been the subject of much controversy in our past, thirty days is our present general rule.
The thirty day pre-election cutoff rule, however, must be viewed for what it is: a practicably necessary deviation from the ideal that all affected and competent adult persons be allowed to vote. The thirty day rule is acceptable because it is rationally related to other important interests. But that rule bears no rational relationship to the process of "voting by petition." In the first place, all voting does not take place on the same day, as there is no requirement that petitioners under Section 21-1-45 all sign the complaint on the same day. Further there is no imperative that the eligibility of the petitioner to vote be ascertained immediately, before the vote is cast. Voting by petition under Section 21-1-45 is not voting by secret ballot and, hence, many of the procedures we have designed to order the normal secret ballot voting process (including having poll books by reference to which the poll workers may determine at a glance whether the person is eligible to vote) are unnecessary.
In the final analysis we emphasize that the persons who registered to vote in Madison County during the months of September 1984 are persons whose political and economic interests are going to be affected by the outcome of the annexation/inclusion proceedings. On grounds of basic fairness, there being no law to the contrary, these persons should have a voice in the matter. Section 21-1-45 provides the mechanism for them to have that voice by either signing the complaint or refraining from such. There being no clear statutory requirement that these persons be excluded, and Plaintiffs having presented no reason on policy or principle why voting by petition should be incumbered by a pre-election registration cutoff date, we hold that the City of Jackson's position is the correct one; that is, for purposes of this action, the question of whether the two-thirds requirement of Section 21-1-45 has been met must be determined by an ascertainment of the number of persons living in the area to be annexed who on October 1, 1984, were registered voters in Madison County, Mississippi, and then determining whether two-thirds of that number have signed the complaint. Compare City of Clinton, Mississippi v. Smith, 493 So.2d 331, 339 (Miss. 1986). As indicated above, when this test is employed we find that 72 out of 115 qualified electors signed the complaint. That is only 62.6 percent, as a *353 result of which the complaint flunks under Section 21-1-45.

V.
Plaintiffs seek to salvage their case by arguing that the City of Jackson has made an inadequate response to requests for admissions, Rule 36, Miss.R.Civ.P. On December 21, 1984, Plaintiffs served requests for admissions upon the City and requested specifically that the City of Jackson admit the following:
That the Complaint in the nature of Petition filed in this cause contains the signatures of at least two-thirds of the qualified electors residing in the territory proposed to be included in the City of Ridgeland, Mississippi, by said Petition.
The City of Jackson neither answered nor served an objection addressed to this matter. Rather the City moved on January 15, 1985  within the thirty days allowed by the rule  to stay the requirement that they respond. The motion was noticed for hearing on February 1, 1985. The record suggests, however, that an ice storm on that date required cancellation of the hearing, which apparently was never rescheduled. In any event, as indicated above, the City's motion for stay remained pending at the time of the March 27, 1985 hearing on the City of Jackson's motion to dismiss which has led in turn to entry of the order appealed from here.
Plaintiffs' position is that the failure of the City of Jackson to deny within thirty days or obtain a protective order requires that the facts in the request be taken as admitted. See Educational Placement Services v. Wilson, 487 So.2d 1316, 1318-19 (Miss. 1986). The motion to stay, however, was timely filed. We regard it as the equivalent of a motion for an extension of time within which to respond to the request. Rule 36(a) and 7(b), Miss.R.Civ.P. This motion operated to prevent the matters set forth in the request from being deemed admitted. Graham v. Three Or More Members of the Six Member Army Reserve General Officers Selection Board of 30 November, 1979, 556 F. Supp. 669, 672 (S.D.Tex. 1983); St. Regis Paper Company v. Upgrade Corporation, 86 F.R.D. 355, 356 (W.D.Mich. 1980).
Without doubt, a motion for stay, or protection order, or whatever, comparable to that filed by the City of Jackson here, does not operate to bar the matters being taken as admitted in perpetuity. The party filing such a motion may lose the benefits of the abeyance status of the request by a failure to proceed with reasonable diligence. See Educational Placement Services v. Wilson, 487 So.2d 1316, 1318-19 (Miss. 1986).
In the end, of course, a certain amount of discretion is vested in the trial judge with respect to whether in a setting such as this he or she will take matters as admitted. Where, as here, a motion for stay was filed before the expiration of the original thirty day period, where that motion was noticed for hearing but the hearing was cancelled for reasons not the fault of anyone, and where there were various other matters pending in the case resulting in an evidentiary hearing on the moving party's motion to dismiss within two months thereafter, we find no error in the decision of the Chancellor to refuse to take the requested matter as admitted. The assignment of error is denied.

VI.
By reason of what has been said above, the final judgment dismissing this action must be affirmed. The effect of that affirmance, however, should be made clear. This action has been dismissed without prejudice to the rights of these Plaintiffs or any other persons residing in this or any other unincorporated territory contiguous to the City of Ridgeland to file a new complaint under Section 21-1-45. All that has been adjudicated here is that the present complaint has not been joined by the percentage of qualified electors. Cf. City of Clinton, Mississippi v. Smith, 493 So.2d 331, 339 (Miss. 1986). The adequacy of any such new complaint must be judged as of the date of its filing in accordance *354 with the standards and principles articulated above.
In the proceedings below in the case at bar we find that there were several deficiencies found in the complaint which border upon deserving of the label "hypertechnical".[5] Our disposition of the matter today does not require that we address and decide these points. Our premonition that today's opinion is not the end of the Ridgeland annexation litigation leads to the view that all might benefit if we make clear that all procedural aspects of a post-January 1, 1986, annexation proceeding are subject to the Mississippi Rules of Civil Procedure except in the case of clear conflict between those rules and some statutory rule. Rule 81(a)(11), Miss.R.Civ.P. At the very worst, the many technical deficiencies found in the complaint are amendable in accordance with Rule 15(a), Miss.R.Civ.P. While rules are necessary and their governance must be respected, in matters of the importance of the core controversy with which we are here concerned, we should be slow to allow insubstantial procedural niceties to interfere with the pursuit of justice.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] But see Rules 7(a) and 10(a), Miss.R.Civ.P., providing that one's initial pleading shall be denominated a "complaint". Rule 81, Miss.R. Civ.P., was amended, effective January 1, 1986, to provide in subparagraph (a)(11) thereof that statutorily prescribed procedures governing the matter of "change in boundaries of municipalities ... shall control to the extent they may be in conflict with these rules; otherwise these rules apply." The present proceedings, however, were commenced October 1, 1984, and have been wholly subject to the Mississippi Rules of Civil Procedure, notwithstanding any statutory rule to the contrary.
[2] The City's calculations are as follows:

 TABULATION OF QUALIFIED ELECTORS SIGNING
 PETITION IN SOUTHERN ANNEXATION AREA
 (27088) COMPARED WITH TOTAL QUALIFIED
 ELECTORS AS OF 10/1/84
Total No. of signatures on petition (one illegible) ___ +98
No. of signers not registered to vote _________________ -15
No. of signers registered after 10/1/84 _______________ -3
No. of signers with residence outside area ____________ -8
 ___
Total qualified electors signing pet. _________________ 72
Registered (prior to 10/1/84) residents not signing ___ 43
 ___
Total qualified electors ______________________________ 115
 Percentage of qualified electors signing petition:
 72/115 = 62.6%

[3] Plaintiffs' calculations are as follows:

Total no. of signatures on Petition 98
No. of signers not registered to vote -15
No. of signers reg. after 10/1/84 -3
No. of signers w/residence outside area -8
 ___
TOTAL REG. VOTERS (as of 10/1/84) SIGNING PETITION 72
TOTAL REG. VOTERS NOT QUALIFIED TO VOTE
 SIGNING PETITION 16
Total qualified electors signing petition 56
Registered (prior to 10/1/84) residents not signing 43
 Less: Registered voters not qualified to vote 18
 ___
Qualified electors not signing 25
TOTAL QUALIFIED ELECTORS 81
Percentage of qualified electors signing petition
 56/81 = 69.358%

The explanation for the difference in Plaintiffs' figures and the City of Jackson's has its source in the fact that 1984 was a presidential and congressional election year. September, 1984, was a heavy voter registration month in north Madison County.
[4] Miss. Code Ann. § 23-5-85 (Supp. 1985) provides:

Every inhabitant of the state, except idiots and insane persons, who is a person of the United States of America, twenty-one years old and upwards, who has resided in this state for one year, and for one year in the county in which he offers to vote, and for six months in the election precinct or in the incorporated city or town in which he offers to vote, and who is able to read and write and who shall have been duly registered as an elector by an officer of this state under the laws thereof, and who has never been convicted of murder, rape, bribery, burglary, theft, arson, obtaining money or goods under false pretenses, perjury, forgery, embezzlement, or bigamy, shall be a qualified elector, in and for the election district or city, town or village of his residence, and shall be entitled to vote at any election held not less than four months after his registration... . (emphasis added)
[5] For example, the Chancellor found the complaint inadequate because the signatures of the party Plaintiffs were affixed to pages attached after the exhibits rather than before.