499 So.2d 758 (1986)
Jimmy Lee SHANNON
v.
Charles HENSON.
No. 57220.
Supreme Court of Mississippi.
December 3, 1986.
*759 J. Max Kilpatrick, Philadelphia, for appellant.
Edward Blackmon, Jr., Canton, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the court:

I.
This election contest turns on questions of timing and procedure. Were the statutorily prescribed procedures for casting absentee ballots complied with? Was judicial review timely sought? And, to what extent is judicial review of an election contest governed by the pleading and practice provisions of the Mississippi Rules of Civil Procedure?
As explained below, this election contest was brought timely  "forthwith", in the wording of the statute. The rules of civil procedure fill in the gaps left by our statute law but do not operate to thwart today's contest. In the end, thirteen absentee ballots must be thrown out because a statutory procedure designed to assure the integrity of the absentee voting process  that requiring the certificate of an attesting witness  was wholly disregarded.
We affirm the decision of the Special Election Tribunal.

II.
On May 21, 1985, the Democratic Primary Runoff Election was held for the post of Alderman, Ward 4, Philadelphia, Mississippi. The two candidates were Charles Henson and Jimmy Lee Shannon. The Philadelphia Municipal Democratic Executive Committee certified Shannon as the winner by a vote of 291-287. In certifying these results, the Executive Committee counted thirteen (13) absentee ballots, ten (10) for Shannon and three (3) for Henson, and rejected eleven (11) contested ballots. The correctness vel non of the Executive Committee's action regarding the absentee ballots is one of the issues on this appeal.
Aggrieved by this result, Charles Henson contested the election, filing his Notice of Protest with the Municipal Democratic Executive Committee on May 30, 1985. Henson requested a recount of ballots and an opportunity to inspect all ballots. On this same date, Sudie Kay Bassett, chairperson of the Municipal Democratic Executive Committee, notified all parties involved *760 that the requested recount would be held on June 3, 1985. On June 3, 1985, Jimmy Lee Shannon filed his answer to the Notice of Protest previously filed by Henson. Included in this answer was a cross-petition by Shannon alleging that the Executive Committee had improperly counted illegal ballots cast on behalf of Henson and had refused to count legitimate ballots cast on behalf of Shannon. Further, Shannon alleged that the Committee had counted absentee ballots which did not conform to law in favor of Henson. Shannon claimed that all of the illegal ballots should be deducted from the totals in the race.
On that same day, June 3, 1985, the Municipal Executive Committee held the recount as requested by Henson, and also held a hearing on Henson's contest. Neither party was aware that the hearing would be held that day, in addition to the recount. Thus, Shannon's attorney requested a continuance before the Executive Committee proceeded with the hearing. The Committee denied this request and rendered its final decision, reaffirming its May 21, 1985, decision certifying Shannon as the winner.
On June 7, 1985, Henson filed in the Circuit Court of Neshoba County, Mississippi, a Petition for Judicial Review which was set for hearing on August 29, 1985. On the date of this hearing, the Special Tribunal dismissed Henson's Petition without prejudice for failure to comply with Miss. Code Ann. § 23-3-45 (1972).
Henson refiled his Petition for Review on September 13, 1985. Again a Special Tribunal was constituted, Hon. Ray H. Montgomery presiding. Miss. Code Ann. §§ 23-3-47 and -71 (1972). On November 18, 1985, Shannon filed his answer to this Petition and a Cross-Petition which included two allegations in addition to those that were in his Cross-Petition filed with the Executive Committee back on June 3, 1985, supra. In addition to reasserting his original Cross-Petition claim that certain ballots counted were illegal, Shannon introduced in this cross-petition new allegations that Henson induced voters with alcoholic beverages and that the Executive Committee failed to count six legal ballots on his behalf that would have rendered him the winner.
The hearing was held on December 9, 1985, before a Special Tribunal.[1] After hearing the testimony and reviewing the evidence, the Tribunal ruled that the thirteen (13) absentee ballots counted by the Municipal Executive Committee as part of the totals were not completed pursuant to Miss. Code Ann. § 23-9-413 (Supp. 1985) (no certificate of attesting witness) and therefore these ballots should be deducted from the totals. The Tribunal also held that the eleven (11) ballots rejected by the Executive Committee were properly rejected. The Special Tribunal's ruling effectively made Henson the winner by a total of 284-281. Jimmy Lee Shannon thus appeals from this order via a Bill of Exceptions pursuant to Miss. Code Ann. §§ 23-3-51 and -71 (1972).

III.

A.
Shannon's first assignment of error is procedural in nature. He points to the fact that, before the Executive Committee and before the Special Tribunal, he filed a "cross-petition" alleging irregularities in the election which, if credited, would result in Shannon being declared the winner. Henson filed no answer to either cross-petition. Shannon seizes upon this failure on Henson's part and argues here that he was entitled to judgment on his "unanswered" cross-petition.
In support, Shannon argues that Mississippi law requires an answer to a cross-petition in an election contest. He points to the Mississippi Rules of Civil Procedure wherein we find Rule 8(d) providing that

*761 averments in a pleading to which a responsive pleading is required ... are admitted when not denied in the responsive pleading. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.
The question then is whether a responsive pleading was required to the cross-petition. Rule 7(a) provides:
There shall be a complaint and an answer; a reply to a counterclaim denominated as such; ... .
If the cross-petition be treated as a counterclaim, then it would seem to be a pleading to which a responsive pleading is required under Rule 7(a).

B.
The failure of Henson to answer the cross-petition before the Executive Committee need not detain us. The Mississippi Rules of Civil Procedure apply only to "civil proceedings" had in a court of record. Rules 1 and 81(a), Miss.R.Civ.P. Proceedings on an election contest before a political party's executive committee are not civil proceedings in a court of record and hence the rules of civil procedure have no application.
Shannon argues further that, if not required by rule of procedure, Henson was required to file an answer to his cross-petition before the Executive Committee by virtue of the statute regulating election contests. He points to Darnell v. Myres, 202 Miss. 767, 32 So.2d 684 (1947) which contains the dictum "the filing of a cross-complaint presupposes an answer." 202 Miss. at 774, 32 So.2d at 686. We fail, however, to find any language, express or implied, in the applicable statute which requires any such answer before the Executive Committee. Darnell certainly may not be understood as a holding to that effect. Further, our attention has been drawn to no rule of the Executive Committee requiring such an answer.
Under the facts of this case it would be particularly inequitable for us to declare Shannon the winner because Henson filed no answer to the cross-petition before the Executive Committee. Shannon's cross-petition was not filed with the Executive Committee until June 3, 1985, the date of the Committee's hearing regarding the election contest. Without contradiction, Henson was not aware until he arrived for the vote recount that the Executive Committee planned to hear his protest that day. As a practical matter, Henson simply had no time to prepare and file an answer. The Executive Committee went ahead and considered the election contest at that time and made its final decision on that date, declaring Shannon the winner. The filing of an answer after that decision would have been a pointless gesture, particularly as Henson just four days later filed his petition for judicial review. We hold that Henson's failure to file an answer to the cross-petition before the Municipal Executive Committee profits Shannon nothing.

C.
The proceedings before the Special Tribunal are another matter. On November 18, 1985, Shannon filed with the Special Tribunal a pleading denominated "Answer, Affirmative Defenses and Cross-Petition." In this cross-petition Shannon alleged that the Executive Committee counted illegal ballots cast in favor of Henson and refused to count legitimate ballots cast in favor of Shannon, collectively in sufficient number that Shannon should be declared the winner. Shannon further alleged that Henson employed intoxicating beverages in the transportation of voters to the polls and thereby successfully induced at least seven voters to vote for him, with the result that there should be deducted from Henson's vote total seven votes. In the prayer of his cross-petition, Shannon asked that he be declared the winner of the Ward 4 Alderman's Race. Henson filed no answer to this cross-petition.
The matter came on for hearing on its merits before the Special Tribunal on December 9, 1985. At 8:50 o'clock that morning, Shannon filed with the Special Tribunal a "Motion for Directed Verdict" asserting *762 his entitlement to judgment in his favor because "Charles Henson has filed no answer to the cross-petition for judicial review." Before the hearing commenced on December 9, 1985, the Special Tribunal heard the so-called motion for directed verdict and overruled it without comment or explanation, at least insofar as the record reflects. The record does reflect that the Tribunal allowed proceedings on the cross-petition to go forward, at the conclusion of which the Tribunal rejected eleven (11) ballots because of various voting irregularities. The Tribunal further found "no merit in the argument that alcoholic beverages were offered to prospective voters" by Henson. The cross-petition was accordingly dismissed.
Rule 81(a)(4), Miss.R.Civ.P., makes clear that practice and procedure in election contests are governed by statute in the first instance and that the Mississippi Rules of Civil Procedure control only to the extent that our legislature has remained silent.[2]Cf. In Re City of Ridgeland, 494 So.2d 348, 354 (Miss. 1986); Bias v. Bias, 493 So.2d 342, 343 n. 1 (Miss. 1986); Universal Computer Services, Inc. v. Lyall, 464 So.2d 69, 73-74 (Miss. 1985); First Mississippi National Bank v. KLH Industries, Inc., 457 So.2d 1333, 1337-38 (Miss. 1984). As there is nothing in the statutes conflicting with the rules respecting counterclaims, we hold that in the present procedural context the Mississippi Rules of Civil Procedure apply.
As indicated above, in determining whether Shannon's cross-petition was one to which an answer was required, we consult Rule 7(a) which provides:
There shall be a ... reply to a counterclaim denominated as such; ... .
To be sure, Shannon's claim against Henson is denominated "cross-petition." Generically it is a counterclaim under whatever label. To have this point turn upon the label placed upon this pleading would be the ultimate exaltation of form over substance. See Rules 8(c) and 81(f), Miss.R. Civ.P. Put otherwise, a counterclaim denominated a "cross-petition" is sufficiently denominated a counterclaim that a reply is required under Rule 7(a).
In considering the effect of Henson's failure to file a formal reply to Shannon's cross-petition, several other rules of procedure must be reviewed. Rule 12(a) directed that Henson should
serve his reply to a counterclaim in the answer within thirty (30) days after service of the answer....
Our concern here is that the cross-petition was filed November 18, 1985, and the hearing was held December 9, 1985, some 21 days later. In other words, the hearing was held nine days prior to the date on which Henson's answer to the cross-petition would ordinarily have been due. While the Court certainly has the authority to require an answer within a time limit less than the thirty day period provided in Rule 12(a), we find no order in the record to that effect. We are reluctant to hold Henson to the strictures of Rule 8(d) when his answer was not due until nine days after the hearing.[3]
Rule 81(d) makes provision for certain civil actions normally heard on an expedited basis. In those actions, triable on their merits shortly after service of process, the rule expressly provides that unanswered complaints and petitions "shall not be taken as confessed." Rule 81(d)(3), Miss.R. Civ.P. To be sure, election contests are not *763 included in Rule 81(d). They are actions expedited where possible. On principle, we should extend the no confession rule to other proceedings where hearing on the merits is had shortly after the pleading is filed  certainly to those cases where the hearing is held before the answer is even due.[4]
Shannon not only asks that the (arguably overly vague, see Shaw v. Burnham, 186 Miss. 647, 658, 191 So. 484, 486 (1939)) factual allegations of this cross-petition be taken as admitted; he further claims entitlement to the relief demanded in his cross-petition by reason of Henson's default. Our rules of civil procedure make provision for the manner in which one party may take advantage of the default of another. That procedure involves an application to the clerk for entry of the other's default followed by application to the court for judgment on the default. See Rule 55(a) and (b), Miss.R.Civ.P.; and Guaranty National Insurance Company v. Pittman, 501 So.2d 377, 387 (Miss. 1986). This rule expressly applies to a counterclaimant wishing to take advantage of the default of a plaintiff-counterdefendant. Rule 55(d), Miss.R.Civ.P. See Claude G. Dern Electric, Inc. v. Bernstein, 144 Vt. 423, 479 A.2d 136, 138 (1984).
The obvious purpose and advantage of the Rule 55 procedure is to assure that the harsh consequences of default are visited upon those truly in default, and not those with excuse or good reason for their failure to plead. Wheat v. Eakin, 491 So.2d 523, 525-26 (Miss. 1986). Indeed, since the advent of our rules of civil procedure we have continued our fundamental policy of relative leniency toward parties claimed to be in default. See Bryant, Inc. v. Walters, 493 So.2d 933, 936-37 (Miss. 1986); Bell v. City of Bay St. Louis, 467 So.2d 657, 666 (Miss. 1985); International Paper Co. v. Basila, 460 So.2d 1202, 1204 (Miss. 1984). Where, as here, the defaulting party appears to have a colorable defense on the merits, we regard that as a factor militating against enforcement of default. Bryant, Inc. v. Walters, 493 So.2d at 937; International Paper Co. v. Basila, 460 So.2d at 1204. Here, of course, the Special Tribunal denied Shannon's application for default, such as it was, and then rejected Shannon's claim on its merits.
We would be happier if the Circuit Court had given a reason for its denial of Shannon's "Motion for Directed Verdict" predicated, as it was, upon Henson's failure to answer the cross-petition. This is one of those cases, however, where in the absence of reasons we will nevertheless assume that the trial court engaged in the appropriate reasoning process to reach the result of denial of the motion. Cf. Rives v. Peterson, 493 So.2d 316, 317 (Miss. 1986). To a large extent, applications for default are addressed to the sound discretion of the trial court. Bryant, Inc. v. Walters, 493 So.2d at 936-37. We have no authority to disturb the trial court's exercise of its discretion absent a firm conclusion on our part that that discretion has been abused. See Wilson v. South Central Mississippi Farmers, Inc., 494 So.2d 358, 360 (Miss. 1986). We do not find here that the Special Tribunal abused its discretion in refusing either to take the allegations of Shannon's cross-petition as admitted or to enter the default of Henson with respect to the cross-petition.

D.
There is a further reason why the fact that Henson did not answer Shannon's cross-petition should afford Shannon no basis *764 for relief here. The nature of judicial review in an election contest is neither fish nor fowl in the sense the Special Tribunal's authority and mode of proceeding are quasi-original and quasi-appellate. The proceedings are in the nature of an appeal in that no matter may be presented to the Special Tribunal not previously heard and decided by the Executive Committee. Darnell v. Myres, 202 Miss. 767, 773, 32 So.2d 684, 685 (1947); Harris v. Stewart, 187 Miss. 489, 507, 193 So. 339, 343-44 (1940).
Entirely new matters appearing for the first time are found in paragraphs numbered IV and VI of Shannon's cross-petition before the Special Tribunal. Paragraph IV alleges that seven (7) voters were improperly induced to vote for Henson through the use of intoxicating beverages. This allegation was not made before the Executive Committee and was not considered or decided by it. Paragraph VI alleges that six (6) legal ballots were not counted and added to his total by the Executive Committee. This allegation was not presented to nor decided by the Committee. By reason of established limitations on the Special Tribunal's scope of review, it would be wholly inappropriate that we take these unanswered allegations of the Cross-Petition as confessed and afford Shannon relief on the basis thereof.
Shannon's Assignment of Error No. 1 is denied.

IV.
Shannon next argues that the judgment below should be reversed because Henson's petition for review was not timely filed. He points to the fact that the decision of the Executive Committee was announced June 3, 1985, and that the petition for judicial review under which Henson was declared the winner was filed on September 13, 1985. The point arises in the context of Miss. Code Ann. § 23-3-45 (1972) which requires that the petition for judicial review shall, upon receipt of an adverse decision from the Executive Committee, be filed "forthwith."
The record reflects that Henson's first petition for review was filed on June 7, 1985, some four days following the action of the Executive Committee. A hearing was held upon this first petition on August 29, 1985, at the conclusion of which Henson's petition was
dismissed without prejudice for failure of the contestant [Henson] to comply with Section 23-3-45 of the Mississippi Code of 1972, Ann.
The order to this effect was entered on October 11, 1985. Prior thereto, on September 13, 1985, Henson had already filed a new petition for judicial review.
We find nothing in the record identifying the reason for dismissal of the first petition. The "without prejudice" language in the order of dismissal certainly contemplates the prospect of Henson refiling, and nothing is said by Shannon on this appeal to the point that the Special Tribunal had no authority to dismiss without prejudice. By way of analogy, we note that this Court has heretofore held that a voluntary dismissal does not prevent a contestant from filing another petition for judicial review. Harris v. Stewart, 187 Miss. 489, 501-03, 193 So. 339, 341-42 (1940).
This Court has held on several occasions that the term "forthwith" connotes no specific fixed time limit. Rather, its meaning depends upon consideration of the surrounding facts and circumstances and varies with each particular case. Smith v. Deere, 195 Miss. 502, 507, 16 So.2d 33, 35 (1943); Turner v. Henry, 187 Miss. 689, 695-96, 193 So. 631, 632 (1940); Harris, 187 Miss. at 502-04, 193 So. at 342.
The Court must examine the peculiar facts of each case in order to determine whether, under the circumstances of the particular case, the forthwith requirement was satisfied. In making this determination, this Court will need once again to familiarize itself with the actual dates and circumstances involved. Henson filed his original Notice of Protest with the Executive Committee on May 30, 1985, nine days after the runoff election. On June 3, 1985, four days later, the Executive Committee *765 heard his protest. On June 7, 1985, four days after the Executive Committee rendered its decision, Henson filed his original Petition for Review in Circuit Court. The hearing in this matter was set for August 29, 1985. At this hearing, the Special Tribunal dismissed Henson's petition without prejudice. Henson subsequently refiled his petition on September 13, 1985, fifteen days after the decision on his original petition.
In this setting, there is no basis for any assertion by Shannon that he was prejudiced by Henson's allegedly tardy filing, for Shannon has known since June 7, 1985, that Henson desired judicial review. He had the same practical opportunity to preserve, prepare and present his case at the December 9, 1985, hearing as if that hearing had been held on the original June 7 petition instead of the refiled September 13 petition.
We hold that the Special Tribunal was well within its authority when it denied the motion to dismiss predicated upon Henson's alleged failure to file his petition for judicial review "forthwith." Harris v. Stewart, 187 Miss. 489, 502-04, 193 So. 339, 341-42 (1940). Shannon's Assignment of Error No. 2 is denied.

V.
Shannon's third assignment of error addresses the substantive issue on the basis of which the Special Tribunal held that Henson was the lawful winner of the Ward 4 primary runoff election. Shannon argues that the Special Tribunal erred when it held that the thirteen absentee ballots, ten of which had been cast in his favor, should be disregarded. To be sure, the point is outcome determinative, for if those absentee ballots be counted, Shannon is the winner, 291-287. Excluding those absentee ballots, Henson is the winner, 284-281.
The Special Tribunal's reason for holding that these thirteen absentee ballots could not be counted was "that the absentee ballot envelopes did not contain nor were they completed pursuant to Section 23-9-413, Miss.Code of 1972, being the certificate of attesting witness."
Mississippi law respecting absentee ballots provides an elaborate procedure designed to assure the integrity of the absentee voting process. The voter is required to make an oath respecting the procedures he followed in casting his ballot, Miss. Code Ann. § 23-9-409(C) (Supp. 1985), and in addition he is required to obtain a certificate of an attesting witness. Miss. Code Ann. § 23-9-413 (Supp. 1985); see Fouche v. Ragland, 424 So.2d 559, 560-61 (Miss. 1982).
Section 23-9-409(C) mandates that the elections registrar shall provide absentee voters written instructions that they must, among other things, "have the attesting witness sign the `attesting witness certificate' on the back of the [absentee voter] envelope." There is no suggestion that this requisite was not met. Section 23-9-413 then requires that the attesting witness swear or affirm
that said voter exhibited to me his blank ballot; that said ballot was not marked or voted before the said voter exhibited the ballot to me; that the said voter then retired out of my presence, but within my sight, and voted his ballot so that I could not see how he voted; that no one was present with said voter as he marked his ballot; that the said voter was not solicited or advised by me to vote for any candidate, question, or issue, and that the voter, after marking his ballot, placed it in the envelope, closed and sealed the envelope in my presence, and signed and swore or affirmed the above certificate.
Thirteen absentee ballots at issue are deficient in two respects. First, the printed form of the certificate of the attesting witness is not that provided in Section 23-9-413, although it is similar.[5] More importantly, *766 the certificate is not signed by anyone on any of the thirteen ballots.
Shannon argues that the absence of the signature of an attesting witness on the ballot envelopes was a mere technicality which did not destroy the spirit and intent of Miss. Code Ann. § 23-9-413 (1972). Shannon relies upon our decision in Riley v. Clayton, 441 So.2d 1322 (Miss. 1983), in which we considered the question of whether a registrar's practice of personally delivering absentee ballots to physically incapacitated voters was such a violation of the Absentee Voting Statute as to render the ballots void. We held that, in the absence of any allegation or proof of fraud or tampering with the delivery of these ballots, such delivery would not void the ballots. Riley, 441 So.2d at 1328. In Riley this Court also stated the following general rule:
The key in deciding whether an act not in strict compliance with the statutory election procedures renders that election void is whether the act is such a total departure from the fundamental provisions of the statute as to destroy the integrity of the election and make the will of the qualified electors impossible to ascertain. [citations omitted]
441 So.2d at 1328.
Notwithstanding Riley, today's case is controlled by Fouche v. Ragland, 424 So.2d 559 (Miss. 1982). Addressing the issue of the effect of the failure of an absentee ballot to have an attesting witness, the Fouche Court held:
The omission of a certificate by a certifying officer is far different than the failure to print the name of the election district or precinct on the back of an absentee ballot. Furthermore, Miss. Code Ann. § 23-9-419 (Supp. 1981) contains a mandatory requirement that a ballot should be rejected if there is a defect in the execution of the outside of the envelope containing an absentee ballot and that such vote shall not be allowed.
424 So.2d at 562.
Fouche is dispositive of the issue at bar, for according to the rationale of Fouche, the absence of an attesting witness' signature on an absentee ballot envelope is a departure from a fundamental provision in the election code and therefore the absentee ballot should not have been counted.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
DAN M. LEE, J., dissents.
NOTES
[1] Members of the Philadelphia Municipal Democratic Executive Committee assisted Judge Montgomery as members of this Special Tribunal. See Miss. Code Ann. §§ 23-3-49 and -71 (1972).
[2] Prior to the advent of the Mississippi Rules of Civil Procedure, this Court had held that in election contests, where a procedural question was presented which was not within any of the statutory procedures found in our election laws, the special tribunal should employ the rules of practice and procedure applicable in civil actions generally. Darnell v. Myres 202 Miss. 767, 774, 32 So.2d 684, 685 (1947); Harris v. Stewart, 187 Miss. 489, 501-02, 193 So. 339, 341 (1940).
[3] We note in passing that Shannon's answer to Henson's complaint qua petition for judicial review was also subject to the 30 day time limit in Rule 12(a). Shannon's answer, served November 18, 1985, was some 36 days late. No one has attempted to place Shannon in default or have Henson's allegations taken as confessed.
[4] Nothing said here should be taken as a retreat from the general rule that, in the ordinary civil action, failure to reply to a counterclaim denominated as such does result in the material and relevant averments of the counterclaim being taken as admitted. See Peters & Russell, Inc. v. Dorfman, 188 F.2d 711, 712-13 (7th Cir.1951); Atkinson v. Atkinson, 167 F.2d 793, 795 (7th Cir.1948); Beard v. Pembaur, 68 N.C. App. 52, 313 S.E.2d 853, 855 (1984); State v. Hladik, 158 Ind. App. 223, 302 N.E.2d 544, 548-49 (1973); 5 Wright and Miller, Federal Practice and Procedure §§ 1184, 1279 (1969); see also Curry v. Pyramid Life Insurance Company, 271 F.2d 1, 5-6 (8th Cir.1959).
[5] The printed language on the back of the absentee voter ballots actually used in this case reads as follows:

Officer's Certificate
I, ____, hereby certify that I administered the oath required by law to the person whose vote is enclosed in this envelope and seal; that I have not made any suggestion nor undertaken to exercise any control or authority over the person in making out this ballot; that the ballot was made out of my presence, but without my seeing the voter's choice marked on the ballot.
 ___________________________
 Official Title
The form of the attesting witness' certificate found in the current Section 23-9-413 was approved in 1972. See Miss. Laws, 1972, ch. 490, § 403(6). The language on the absentee ballot envelopes used in this election has been in use for many years and was not changed after the 1972 enactment.