# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-AN-00117-SCT

*JOHN FLETCHER, JOHN MCCONNON AND*
*TOM LEADER*

*v.*

*DIAMONDHEAD INCORPORATORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/07/2010 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID NEIL MCCARTY |
| | WILLIAM MICHAEL KULICK |
| | OLIVER E. DIAZ, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN PRESTON SCANLON |
| | JERRY L. MILLS |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 10/27/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., RANDOLPH AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.    John Fletcher, John McConnon, and Tom Leader (collectively, "Fletcher") appeal an order of the Chancery Court of Hancock County incorporating the City of Diamondhead, Mississippi.  Fletcher argues that the chancery court lacked jurisdiction over the petition for incorporation because it did not include two-thirds of the signatures of the qualified electors residing in the proposed incorporation area, and notice was improper.  Fletcher also argues

that objectors to the incorporation were denied the right of cross-examination at the hearing, and that the second chancellor's failure to order a new trial was an abuse of discretion.

¶2.     This Court finds that the petition for incorporation met the jurisdictional requirements, because notice was proper and the petitioners presented substantial evidence that the petition contained two-thirds of the signatures of the qualified electors residing in the proposed incorporation area.  We find that the chancellor did not deny the objectors' right of cross-examination, and the second chancellor's decision not to order a new trial was within his sound discretion.  Therefore, we affirm.

## FACTS

¶3.     On July 22, 2008, the Diamondhead Incorporators (Incorporators) filed a petition to incorporate the City of Diamondhead.  On August 8, 2008, the chancery court set a hearing on September 15, 2008.  On September 15, 2008, both the Incorporators and individual objectors to incorporation appeared, and the chancellor called the matter up for hearing.  But then the chancellor recused himself from the case due to the contested nature of the petition, and entered an order of continuance until November 3, 2008.  On September 29, 2008, all the chancellors of the Eighth Chancery Court District recused themselves, and on October 8, 2009, this Court appointed Special Chancellor Kenneth Middleton to hear the case.  Due to a conflict with the November 3, 2008, hearing date, Chancellor Middleton continued the hearing until January 9, 2009.

¶4.     The hearing occurred on January 9, 2009. The Incorporators presented the testimony of several members of the Diamondhead Property Owners' Association (POA) about the decision to pursue incorporation and the process of acquiring and compiling the signatures

2

of Diamondhead residents in the petition to incorporate. The Incorporators also presented the testimony of an expert in urban planning and development. After the Incorporators rested, the court heard the sworn testimony and unsworn statements of five individuals who objected to the incorporation. These objectors proceeded pro se. The court also accepted several written statements by various Diamondhead residents who objected to incorporation. Sadly, Chancellor Middleton passed away after the hearing and before ruling on the case.

¶5. This Court appointed Special Chancellor Billy Bridges, who ruled on the case. Under Title 21 of the Mississippi Code, after a hearing on a petition for incorporation, a chancellor shall enter a decree declaring the creation of a municipal corporation upon a finding "from the evidence that the proposed incorporation is reasonable and is required by public convenience and necessity." Miss. Code Ann. § 21-1-17 (Rev. 2007). This Court has set out factors for making this determination in *Incorporation of the City of Oak Grove v. City Hattiesburg*, 684 So. 2d 1274, 1276 (Miss. 1996) (citing *City of Pascagoula v. Scheffler*, 487 So. 2d 196, 200-02 (Miss. 1986)). In his findings of fact and conclusions of law, Chancellor Bridges applied these factors and found that incorporation of the City of Diamondhead was reasonable and required by public convenience and necessity. Chancellor Bridges granted the petition for incorporation. On January 12, 2010, he entered a final decree of incorporation of the City of Diamondhead.

¶6. On appeal, Fletcher does not attack the chancellor's finding that incorporation was reasonable and required by public convenience and necessity. Rather, Fletcher argues that the chancery court lacked jurisdiction because the petition lacked the requisite number of signatures and the notice of hearing was inadequate, or that a new trial is required because

3

Chancellor Middleton violated the objectors' right to cross-examine the Incorporators' witnesses, and Chancellor Bridges abused his discretion by failing to hold a new hearing after Chancellor Middleton's death.

## I. WHETHER THE TRIAL COURT HAD JURISDICTION TO CONSIDER THE PETITION FOR INCORPORATION.

### A. Signature requirement.

¶7.     Mississippi Code Section 21-1-13 lists the requirements a petition for incorporation "shall" meet:

> (1) it shall describe accurately the metes and bounds of the territory proposed to be incorporated and there shall be attached to such petition a map or plat of the boundaries of the proposed municipality;
>
> (2) it shall set forth the corporate name which is desired;
>
> (3) it shall be signed by at least two-thirds of the qualified electors residing in the territory proposed to be incorporated;
>
> (4) it shall set forth the number of inhabitants of such territory;
>
> (5) it shall set forth the assessed valuation of the real property in such territory according to the latest available assessments thereof;
>
> (6) it shall state the aims of the petitioners in seeking said incorporation, and shall set forth the municipal and public services which said municipal corporation proposes to render and the reasons why the public convenience and necessity would be served by the creation of such municipal corporation;
>
> (7) it shall contain a statement of the names of the persons the petitioners desire appointed as officers of such municipality; and
>
> (8) it shall be sworn to by one or more of the petitioners.

Miss. Code Ann. § 21-1-13 (Rev. 2007). Petitioners for incorporation have the burden to prove the sufficiency of the petition. *In re City of Pearl*, 279 So. 2d 590, 592 (Miss. 1973).

4

"This Court reviews the chancellor's findings for manifest error as to whether a petition for incorporation is legally sufficient." ***City of Jackson v. Byram Incorporators***, 16 So. 3d 662 (Miss. 2009) (citing ***City of Pascagoula v. Scheffler***, 487 So. 2d 196, 199 (Miss. 1986)).

¶8.    The chancellor determined that the court had jurisdiction over the petition to incorporate the City of Diamondhead because the petition met all requisites of Section 21-1-13.  In particular, the chancellor found that the petitioners had presented substantial evidence that the petition contained two-thirds of the signatures of the qualified electors in the proposed incorporation area.  Fletcher challenges the chancellor's finding that the petition contained the signatures of two-thirds of the qualified electors in the proposed incorporation area.  This Court has held that, if the chancery court determines that a petition does not contain the requisite number of signatures, it must dismiss the petition for lack of jurisdiction.  ***Myrick v. Incorporation of Stringer***, 336 So. 2d 209, 211 (Miss. 1976). Fletcher argues that the chancery court lacked jurisdiction over the petition because it did not include the requisite number of signatures.

¶9.    "[T]he question of whether the two-thirds requirement . . . has been met must be determined by an ascertainment of the number of persons living in the area to be annexed who [on the date the petition was filed] were registered voters in [the proposed incorporation area], and then determining whether two-thirds of that number have signed the complaint." ***In re City of Ridgeland***, 494 So. 2d 348, 352 (Miss. 1986) (discussing the two-thirds requirement for annexations).  In ***City of Pascagoula***, the incorporators of the City of Gautier canvassed the relevant area and reviewed telephone books, utility consumer rolls, and postal lists to determine the number of qualified electors in the area.  ***City of Pascagoula***, 487 So.

2d at 200. Then, the incorporators aided the commissioner of elections in removing from the voter rolls the names of persons who had died or moved away. *Id.* In ruling on a challenge to the petition's compliance with the two-thirds requirement, this Court stated the voter rolls and poll books are "the most viable record" from which to determine the number of qualified electors in a proposed incorporation area. *Id.* But this was because the incorporators in *City of Pascagoula* had requested purging of the voters roll before they filed the petition for incorporation. *Id.* The Court recognized that voter rolls and poll books may be inaccurate due to lack of notice to the clerk when registered voters die or move away. *Id.* "[C]ounty registration and poll books most accurately reflect the number of qualified electors. However, these records do not remain static, but must be corrected to reflect changes of residences, etc." *Id.*

¶10. Fletcher argues that the requisite number of signatures is simply calculated as two-thirds of the number of persons listed on the voter rolls applicable to the proposed incorporation area. Fletcher argues that the certified voter rolls on the date the petition was filed and admitted into evidence show that 5,920 qualified electors lived in the Diamondhead community on that date. Two-thirds of that number is 3,947. Because the petition contained only 3,518 signatures, Fletcher argues, the petition did not comply with Section 21-1-13, and dismissal was required.

¶11. We reject Fletcher's argument. As recognized in *City of Pascagoula*, and as demonstrated by the evidence in this case, voter rolls are not conclusive evidence of the number of qualified electors living in the proposed incorporation area at the time the petition is filed. The co-chair of the petition subcommittee, Audrey Ramirez, testified on behalf of

6

the Incorporators that the petition drive had extended over an eleven-month period preceding the filing of the petition. Ramirez testified that the Incorporators had obtained copies of the voter rolls for the Diamondhead East and Diamonhead West precincts. Over the eleven-month period, Ramirez kept in contact with the circuit clerk's office about updates in voter information. She testified that, not only did the Incorporators conduct personal investigations, but they reviewed obituary notices, the United States Social Security Index, tax records, utility lists, and the POA's membership list. She testified that the Incorporators used the voter rolls to compile a database to track those who had signed the petition, those who had objected to the petition, those who had died, and those who had moved away from Diamondhead. A copy of this database was admitted into evidence. Ramirez testified that this process revealed inaccuracies in the voter rolls: in some instances the voter rolls erroneously showed three or four different families living at the same address, persons who had died, and persons who had moved away. Ramirez also testified that the Incorporators had removed thirty-five persons who were listed on the voter rolls because a physical investigation had revealed that, actually, these persons resided outside the proposed incorporation area. This Court finds that, due to the evidence that the voter rolls listed persons who were not qualified electors because they had died, moved away, or did not reside in the proposed incorporation area, the voter rolls were not conclusive evidence of the number of qualified electors in the proposed incorporation area.

¶12. In determining that the Incorporators had obtained the requisite number of signatures, the chancellor relied in part on Exhibit P-12, a summary tabulation of the qualified voters residing in the proposed incorporation area gleaned from the updated database and created

7

by Chris Watson. Exhibit P-12 showed that the total number of persons whose names had appeared on the voter rolls during the eleven-month period was 6,571. Of these voters, the Incorporators offered evidence that thirty-five lived in the precincts but outside the proposed incorporation area. The Incorporators offered evidence that 1,891 persons had died, moved away, or should have been purged from the voter rolls, leaving 4,645 qualified electors residing in the proposed incorporation area at the time the petition was filed. Of these, 3,518 signed the petition, or 75.7 percent. Chris Watson offered expert testimony that the Incorporators had used reliable methods to compile the database, and that the numbers in Exhibit P-12 were accurate. The chancellor found that the Incorporators had taken into account deaths, moves, and all appropriate factors that would impact the number of qualified electors in the proposed incorporation area. The chancellor found that the Incorporators had enough signatures after subtracting the signatures of thirteen persons who had requested the removal of their names from the petition. The Court finds that the chancellor did not manifestly err in finding that two-thirds of the qualified electors in the proposed incorporation area at the time of the filing of the petition had signed the petition for incorporation.

### B. Notice requirement

¶13. Another jurisdictional requirement applicable to a petition for incorporation is that affected persons receive proper notice of the hearing on the proposed incorporation. *Norwood v. Extension of Boundaries of Itta Bena*, 788 So. 2d 747, 751 (Miss. 2001). The notice requirement is codified at Mississippi Code Section 21-1-15, which states:

After the filing of said petition, and upon request therefor by the petitioners, the chancellor shall set a day certain, either in term time or in vacation, for the hearing of such petition and notice shall be given to all persons interested in, affected by, or having objections to the proposed incorporation, that the hearing on the petition will be held on the day fixed by the chancellor and that all such persons will have the right to appear and enter their objections, if any, to the proposed incorporation. The said notice shall be given by publication thereof in some newspaper published or having a general circulation in the territory proposed to be incorporated once each week for three consecutive weeks, and by posting a copy of such notice in three or more public places in such territory. The first publication of such notice and the posted notice shall be made at least thirty days prior to the day fixed for the hearing of said petition, and such notice shall contain a full description of the territory proposed to be incorporated. However, if any of the territory proposed to be incorporated is located within three miles of the boundaries of an existing municipality, then such existing municipality shall be made a party defendant to such petition and shall be served with process in the manner provided by law, which process shall be served at least thirty days prior to the date set for the hearing.

Miss. Code Ann. § 21-1-15 (Rev. 2007). The petitioners have the burden to prove that they met all statutory notice requirements. *Myrick*, 336 So. 2d at 210. The record must contain proof that posting and publication were accomplished in compliance with Section 21-1-15. *Norwood*, 788 So. 2d at 751 (posting); *In re Town of Mantachie*, 685 So. 2d 724, 726 (Miss. 1996) (publication). Because notice is in lieu of personal service, strict compliance with Section 21-1-15 is required. *Norwood*, 788 So. 2d at 751.

¶14. In this case, the petition for incorporation was filed on July 22, 2008, and the chancellor set the hearing for September 15, 2008. All municipalities within three miles of the proposed incorporation area were served with process. As shown by the proof of publication contained in the record, the Incorporators published notice of the hearing in the *Sea Coast Echo*, the local newspaper, on August 13, 20, and 27, 2008, and on September 3, 2008. The record also contains the affidavit of posting of Earnest J. Knobloch, who attested

9

that notice of hearing was posted in six public places on August 12, 2008. The chancellor found from this evidence that all required notice had been given as mandated by Section 21-1-15.

¶15. Fletcher concedes that the publication and posting of the September 15, 2008, hearing date complied with Section 21-1-15. But he complains that notice still was deficient because the hearing date that was published and posted was incorrect. Fletcher argues that, when no hearing occurred on September 15, 2008, because the case was continued, the Incorporators should have published and posted notice of the new hearing date, January 9, 2009. As previously stated in the recitation of the facts, court was convened on September 15, 2008, with objectors present. The chancellor continued the hearing until November 3, 2008. This Court appointed Chancellor Middleton, who continued the hearing until January 9, 2009, due to a conflict. Fletcher argues that the Incorporators should have published and posted notice of the January 9, 2009, hearing.

¶16. This issue presents a question of law which is subject to de novo review. *City of Jackson*, 16 So. 3d at 670. In Section 21-1-15, the Legislature set forth the due process requirements for providing notice of incorporation proceedings to citizens residing within a proposed incorporation area. Section 21-1-17 states that the hearing shall occur on the date noticed, except that the chancellor may continue the case in the interests of justice. Miss. Code Ann. § 21-1-17 (Rev. 2007). Specifically, Section 21-1-17 states that "[a]t the time fixed, the chancellor shall proceed to hear all evidence offered in support of said petition, together with all objections, if any, that may be presented . . . . The chancellor shall have the power, however, to grant such continuances as justice may require." Miss. Code Ann. § 21-

10

1-17 (Rev. 2007). The incorporation statutes do not provide for renotice of a continued hearing. "The statutory notice having been given, [owners of property within the proposed incorporation area become] parties to the proceedings in the chancery court." *Sperry-Rand Corp. v. City of Jackson*, 245 So. 2d 574, 575 (Miss. 1971). "This status continues through the final decree." *Id.* Once proper notice of the hearing date set by the chancellor has been provided in compliance with Section 21-1-15, if the hearing is continued, then all parties have notice. Because the Incorporators provided proper notice of the original hearing date, no further notice was required when the case was continued.

¶17. Fletcher cites *In re City of Hattiesburg*, 840 So. 2d 69 (Miss. 2003), for the proposition that this Court has required renotice of the hearing when a case was continued. In *City of Hattiesburg*, renotice occurred after the petitioners had filed a corrected petition after they voluntarily had dismissed their original petition. *Id.* at 74, 98. On appeal, the objectors argued that the notice had been insufficient to satisfy their right to due process of law. *Id.* This Court rejected their argument because "more than minimum notice" had been given to the citizens. *Id.* In so finding, the Court noted that, after the corrected petition was filed, the chancellor had entered an order providing for renotice of the hearing by posting and publication. *Id.* Contrary to Fletcher's argument, *City of Hattiesburg* never held that due process requires renotice anytime an incorporation or annexation case is continued. The Court simply found that because the citizens had received more than statutory notice, their argument that they had not received due process was without merit. *Id.* And unlike in this case, in *City of Hattiesburg*, the original petition was dismissed and a corrected petition filed,

11

and it was only then that the chancellor ordered renotice. *Id.* We hold that no renotice was required under the facts of this case.

## II. WHETHER THE CHANCERY COURT VIOLATED FLETCHER'S DUE-PROCESS RIGHT TO CROSS-EXAMINE WITNESSES.

¶18. Fletcher argues that the chancellor violated the objectors' right to cross-examine the Incorporators' witnesses. Four witnesses testified for the Incorporators. After the Incorporators' counsel tendered each witness, the chancellor directed the witness to step down. The objectors did not cross-examine the witnesses. Fletcher argues that, by directing each tendered witness to step down, the chancellor denied the objectors' right to cross-examination.

¶19. The objectors had the opportunity for cross-examination after the Incorporators' counsel tendered each witness, but they did not exercise that opportunity. Fletcher's argument rests on the premise that, because the objectors were proceeding pro se, they were unable to exercise their right to cross-examination without special direction from the chancellor. This Court has held that "pro se parties should be held to the same rules of procedure and substantive law as represented parties." *Buckel v. Chaney*, 47 So. 3d 148, 153 (Miss. 2010) (quoting *Dethlefs v. Beau Maison Dev. Corp.*, 511 So. 2d 112, 118 (Miss. 1987)). Fletcher argues that this rule should not apply to an incorporation proceeding, because such a proceeding provides a service to the citizenry that permits them to challenge the creation of new municipality in which they will live. Contrary to Fletcher's argument, this Court has held pro se litigants in an incorporation case to the same standard as represented parties, noting that "the objectors could have retained counsel had they chosen

12

to do so." ***In re City of Clinton***, 955 So. 2d 307, 331 (Miss. 2007). This issue is without merit.

> III. WHETHER THE SECOND CHANCELLOR ABUSED HIS DISCRETION BY FAILING TO ORDER A NEW TRIAL.

¶20. Fletcher argues that Chancellor Bridges should not have ruled on the case without ordering a new hearing after the death of Chancellor Middleton. Fletcher argues that, because he had not seen the witnesses testify, Chancellor Bridges was in the same position as an appellate court ruling from "the cold record" without having "smelled the smoke of battle." Fletcher contends that "in a case as complex as incorporation, the reality is that the findings of fact and conclusions of law could have only be[en] accurate if weighed and authored by the sitting trial judge."

¶21. According to Mississippi Rule of Civil Procedure 63(b):

> If for any reason the judge before whom an action has been tried is unable to perform the duties to be performed by the court after a verdict is returned, or *after the hearing of a non-jury action*, then any other judge regularly sitting in or assigned under law to the court in which the action was tried may perform those duties; but if such other judge is satisfied that he cannot perform those duties, he may in his discretion grant a new trial.

M.R.C.P. 63(b) (emphasis added). When the original hearing judge is unable to perform his duties after the hearing of a nonjury action, such as an incorporation proceeding, a new judge may order a new hearing in his discretion if he is satisfied he cannot perform those duties without a new hearing. M.R.C.P. 63(b). We recently held that, when a prior judge had ordered a new trial based on his assessment of jury bias, passion, or prejudice, a successor judge was in an inferior position and erred by vacating the new trial order. ***Pinecrest, LLC v. Harris***, 40 So. 3d 557, 562 (Miss. 2010); M.R.C.P. 63.

13

¶22. This case is wholly distinguishable from *Pinecrest* because Chancellor Middleton had not ordered a new hearing prior to his death. When Chancellor Bridges was appointed, he evidently was satisfied he could perform Chancellor Middleton's duties without a new hearing. M.R.C.P. 63(b). Although Fletcher argues a new hearing was required, he does not take issue with Chancellor Bridges's fact findings that incorporation of the City of Diamondhead was reasonable and required by public convenience and necessity. We find this issue to be without merit.

**CONCLUSION**

¶23. We affirm. The incorporation petition met the jurisdictional requirements because notice was proper and the petitioners presented substantial evidence that the petition contained two-thirds of the signatures of the qualified electors residing in the proposed incorporation area. The chancellor did not deny Fletcher's right to cross-examination, and the second chancellor's decision not to order a new trial was within his sound discretion.

¶24. **AFFIRMED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR.**